Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JUNTA DE RETIRO DE LA UNIVERSIDAD DE PUERTO RICO; EDUARDO BERRÍOS TORRES; LUIS VICENTY SANTINI; SONIA H. REYES CRUZ; ITZA DEYNES VARGAS; ELISA CRUZ RODRÍGUEZ; AIXA RAMÍREZ TOLEDO; ANGEL RUCABADO VÉLEZ; FRANCES M. BOTHWELL; ROGELIO J. CARDONA CARDONA; MIGUEL E. PÉREZ DÍAZ; VIVIAN CARRO FIGUEROA; LUIS P. SÁNCHEZ LONGO; VICENTE LEÓN OCASIO; ANTONIO ZARAGOZA RODRÍGUEZ; JOSÉ PÉREZ MOLL; FERNANDO NERIS FLORES | | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
| | KLAN201900304 | Civil número: SJ2018CV10382 |
| | CONS. CON | SJ2018CV09660 |
| Apelantes | KLCE201900366 | Sobre: Interdicto Provisional y Permanente |
| v. | | |
| UNIVERSIDAD DE PUERTO RICO REPRESENTADA POR LA JUNTA DE GOBIERNO DE LA UNIVERSIDAD DE PUERTO RICO; LA JUNTA DE GOBIERNO DE LA UNIVERDAD DE PUERTO RICO FIDUCIARIA DEL FIDEICOMISO DEL SISTEMA DE RETIRO DE LA UNIVERDAD DE PUERTO RICO | | |
| Apelados | | |

Panel integrado por su presidenta, la jueza Birriel Cardona, y la jueza Ortiz Flores y el juez Rodríguez Casillas.

**Birriel Cardona, Jueza Ponente**

# S E N T E N C I A

En San Juan, Puerto Rico, a 30 de septiembre de 2020.

Comparece la Junta de Retiro de la Universidad de Puerto Rico, (en lo sucesivo, la Junta de Retiro o la apelante), mediante Petición de *Certiorari* y *Apelación*, presentadas ambas el 21 de marzo de 2019, en los casos designados alfanuméricamente KLCE20190366 y KLAN20190304, los cuales consolidamos

Número Identificador

SEN2020 _____

Case:23-01388-BSJ Doc#:26-3 Filed:05/24/23 Entered:05/24/23 23:05:50 Desc:
SJ2023cv04406 Exh05/2020 Complaint Entrada Pág 2 of 54    Page 2 de 54

mediante *Resolución* de 23 de abril de 2019. En su Petición de
*Certiorari* la Junta de Retiro solicita la revocación de la *Resolución*
emitida el 22 de febrero de 2019, por el Tribunal de Primera
Instancia, Sala de San Juan (TPI o foro primario) en el caso civil
núm. SJ2018CV09660, que declaró *No Ha Lugar* la solicitud de
*injunction* preliminar presentada por dicha parte y ordenó la
reasignación del caso a la sala civil competente para el trámite
ordinario de la causa de acción de *injunction* permanente.
Concluyó el foro primario que en esa etapa de los procedimientos
de la prueba presentada no surge que el incumplimiento de la
Junta de Gobierno con el deber de fiducia fuese sustancial como
para que procediera su destitución y el *injunction* preliminar
solicitado por la Junta de Retiro.

En la Apelación presentada ante este Tribunal de
Apelaciones la Junta de Retiro solicita, además, la revocación de
la Sentencia emitida el 22 de febrero de 2019, por el foro primario,
en el caso civil núm. SJ2018CV10382. Mediante dicha Sentencia,
el TPI declaró *No Ha Lugar* la Demanda *de Interdicto Preliminar y
Permanente* presentada el 5 de noviembre de 2018, por la Junta
de Retiro y *Con Lugar* la *Solicitud de Desestimación* presentada
por la Junta de Gobierno de la Universidad de Puerto Rico (en lo
sucesivo, la Junta de Gobierno o la apelada).   En la sentencia
apelada concluyó el foro primario, que la Junta de Gobierno está
facultada por la Ley de la Universidad de Puerto Rico y por la
Escritura de Fideicomiso para determinar los poderes que delegará
a la Junta de Retiro; **que en el ejercicio de dicha facultad, la
apelada enmendó el Reglamento del Sistema de Retiro,**
mediante el procedimiento establecido y que las enmiendas
objetadas por la Junta de Retiro son cónsonas con el derecho
aplicable y con la Escritura de Fideicomiso.

Case:23-00583-13 Doc#:26-3 Filed:05/24/23 Entered:05/24/23 13:30:50 Desc:
SJ2023CV Appendix Exhibit 3 05 Complaint Entrada Num 1 Page 3 de 54

Por los fundamentos que pasamos a exponer, revocamos ambos dictámenes emitidos por el foro primario.

**I**

Procedemos a exponer los hechos incontrovertidos y el trasfondo procesal ante el foro primario.

La Universidad de Puerto Rico es una entidad de educación superior creada mediante la Ley de la Universidad de Puerto Rico, Ley Núm. 135 de 7 de mayo de 1942, derogada por la Ley Núm. 1-1966, 18 LPRA sec 601, et seq.

La Junta de Retiro de la Universidad de Puerto Rico, representada por su Presidente, el Dr. Berríos Torres, es una entidad creada mediante la aprobación del Plan de Pensiones para la Universidad de Puerto Rico, (UPR) por el Consejo Superior de Enseñanza de la UPR. El Dr. Berríos Torres es fideicomisario y participante del Fideicomiso del Sistema de Retiro.

El Plan de Pensiones para la UPR fue aprobado el 28 de noviembre de 1950 por el Consejo Superior de Enseñanza de la UPR, y establecía que la Junta de Retiro estaría compuesta por los representantes de varias facultades. Se dispuso además, que el Consejo Superior de Enseñanza sería el *trustee* o fiduciario del Sistema de Retiro pero que la Junta de Retiro (el *board*) "*shall direct the adminstration of the system in accordance with the provision hereof, subject to the orders, rules, directions and resolutions of the trustee*".

El 20 de enero de 1966, la Ley de la Universidad de Puerto Rico fue enmendada mediante la Ley Núm. 1 de 20 de enero de 1966 para constituir la UPR como una corporación pública del Estado Libre Asociado. En La **Ley Núm. 1-1966** se obligó al Consejo de Educación Superior a "mantener un plan de seguro

Case:23-00886-18S-v-Doc#26-1-Docfilento06/24/23-Fillento06/15/23-22:33:50  Desc:
SJ2023App@e44088-ExhibR023085-Main Documento Entrada Page-4 of 54  Página 4 de 54

médico y un sistema de pensiones para todo el personal universitario, el cual incluirá un plan de préstamos.

En cumplimiento con dicho mandato legislativo, el 1 de julio de 1973, el Consejo de Educación Superior aprobó **la Certificación Núm. 27 (1973-74) en la cual estableció el *Reglamento del Sistema de Retiro*.** Conforme a la Certificación Núm. 37 (1973-74) y el *Reglamento del Sistema de Retiro* la Junta de Retiro era administrador y custodio de los fondos del sistema de retiro; era responsable directamente al Consejo de Educación Superior y seguía consistiendo de miembros representantes de los recintos universitarios.

Según el ***Reglamento del Sistema de Retiro*** la única obligación de la UPR hacia la Junta de Retiro era suministrarle información escrita sobre periodos de servicio, fecha de nacimiento, salarios, nuevos ingresos al servicio y cualquier otra información relacionada con los empleados que fuera necesaria para el funcionamiento efectivo de las operaciones el sistema. Además, la UPR estaba obligada a hacer el pago de las anualidades y beneficios que se concedían y con el pago de las aportaciones de Universidad necesarias para sostener el sistema.

El 30 de noviembre de 1989, el Consejo de Educación Superior emitió la Certificación Núm. 53 (1989-90) en la cual enmendó el Reglamento del Sistema de Retiro para establecer que el Consejo de Educación sería el fiduciario del Sistema de Retiro y tendría la responsabilidad del funcionamiento adecuado del sistema. En dicha enmienda de 1989, se limitaron los deberes y facultades de la Junta de Retiro a deberes de asesoría y recomendación sobre aspectos relevantes a la administración del Sistema de Retiro ante la Junta de Gobierno.

Case:23-01063-BSJ Doc#:26-3 Filed:05/24/23 Entered:06/15/23 13:30:04 Desc:
SJ2023CV04406 Appendix Exhibit 05/09/2023 05:40:00 p.m. Entrada Núm. 4 Page 5 de 54

El 12 de junio de 1997, mediante la Certificación Núm. 137
(1996-97), la Junta de Síndicos reiteró las funciones limitadas de
la Junta de Retiro.

Posteriormente, se enmendó la Ley de la Universidad de
Puerto Rico mediante la aprobación de la Ley Núm. 13 de 30 de
abril de 2013, en la que **se eliminó la Junta de Síndicos de la
UPR y se creó la Junta de Gobierno, estableciendo las
normas de su funcionamiento, sus deberes y atribuciones.**
Entre las enmiendas aprobadas mediante la Ley Núm. 13-2013 se
estableció que entre los deberes y funciones de la Junta de
Gobierno está **"mantener un plan de seguro médico y un
sistema de pensiones para todo el personal universitario,
el cual incluirá el plan de préstamos sin interponerse a los
poderes de la Junta de Retiro".**

El 17 de diciembre de 2013, la firma Cavanaugh McDonald
preparó y publicó un documento titulado "Nuevas Reglas del GABS
Sobre la Contabilidad del Plan de Pensión Gubernamental del 17
de diciembre de 2013", en el cual se le **recomendó a la Junta
de Gobierno de la UPR el adoptar la amortización cerrada
de la deuda actuarial a treinta (30) años; la Junta de Retiro
avaló tal estudio actuarial y en la Resolución de 24 de
octubre de 2014 recomendó a la Junta de Gobierno el
adoptar la amortización cerrada a treinta años(30) años.,**

Así las cosas, el 22 de abril de 2014, la Junta de Gobierno
aprobó la Certificación Núm. 10 (2013-14) para revisar su
Reglamento Interno. Mediante dicha Certificación Núm. 10 se creó
un Comité de Sistema de Retiro permanente constituido por
miembros de la Junta de Gobierno.  Dicho Comité de Sistema de
Retiro se le asignó el deber de atender los aspectos
presupuestarios, económicos, de planificación financiera y de

Case:23-01806 Doc#:26-3 Filed:05/24/23 Entered:05/24/23 13:30:50 Desc:
SJ2023 Appendix Exhibit 2020 Complaint Entrada Page 6 of 54

mejoras permanentes. El Comité de Retiro también se encargaría de asesorar a la Junta de Gobierno y hacer recomendaciones sobre estados financieros, atender en los asuntos relacionados con la formulación de las políticas, la administración, la operación y la reglamentación del Sistema de Retiro y en los asuntos relacionados con la inversión de fondos.

El 14 de junio de 2015, la Junta de Gobierno mediante la Certificación Núm. 146 (2014-2015), estableció un plan de pago y determinó que la deuda actuarial del Sistema de Retiro de la UPR sería amortizada bajo un método de financiamiento cerrado a un término de cuarenta (40) años, a partir del 1 de julio de 2015.[1]

El **17 de junio de 2016**, la Junta de Gobierno promulgó la Certificación Núm. 118 (2015-2016) en la que autorizó el otorgamiento de la *Escritura de Ratificación y Reconocimiento de Fideicomiso*, *"Confirmation and Acknowledgement of Trust"* con el fin de formalizar la constitución del fideicomiso de facto del Sistema de Retiro como un fideicomiso en cumplimiento con las disposiciones de leyes actuales.

El **29 de junio de 2016**, la Junta de Gobierno suscribió la Escritura Número 59 de **Ratificación y Reconocimiento de Fideicomiso** (Escritura de Fideicomiso) ante el notario Alberto Luis Toro Suárez. **En dicha Escritura de Fideicomiso** se designó al Sr. Urayoán Walker-Ramos como el **fideicomitente ("Original Settlor")** y patrono **("Employeer").**

Además, mediante **el Artículo 1, Sección 1.1 y el Artículo II, Sección 2.1 de la Escritura de Fideicomiso** se designó a la

---

[1] La Junta de Gobierno aprobó la Certificación Núm. 146 (2014-2015) luego de evaluar las recomendaciones de la Junta de Retiro, de la directora Ejecutiva del Sistema de Retiro y del Comité de Asuntos Financieros y de Sistema de Retiro.

Case:23-01806-13 Doc#:26-3 Filed:05/2-23 Entered:06/05/23 42:13:30:50   Desc:
SJ2023CV Appendix 1 05/2023 05 Complaint Dkt.1 NPage Page 7 de 54

UPR, actuando mediante su Junta de Gobierno, como **fiduciario** ("*Original Trustee*"), con la facultad de administrar y gobernar el plan de pensiones y el fondo del fideicomiso, en concordancia con lo dispuesto en la Certificación Núm. 27. El Artículo 1, Sección 1.1 estableció que la Junta de Gobierno tendría la responsabilidad fiduciaria por el plan de pensiones y el fondo del fideicomiso y le reconoció autoridad para delegar funciones administrativas y otros poderes discrecionales a la Junta de Retiro y al Director Ejecutivo.

Asímismo, el Artículo II, Sección 2.1 estableció claramente la responsabilidad de la Junta de Gobierno (*Original Trustee*) sobre las contribuciones realizadas al fondo del fideicomiso y dispuso además, que la Junta de Gobierno sería responsable de invertirlas en concordancia con las disposiciones de la Certificación Núm. 27, fundamentalmente las políticas de inversiones.

En lo referente a la **Junta de Retiro**, el Artículo I Sección 1.2 de la *Escritura de Fideicomiso* dispuso que esta representa a los participantes y retirados en cuanto al Plan de Pensiones y le responde directamente a la Junta de Gobierno. Asímismo, el **Artículo II Sección 2.1** de dicha Escritura de Fideicomiso estableció que tanto la Junta de Gobierno como la Junta de Retiro debían colaborar en establecer soluciones con procedimientos razonables al realizar y aceptar las contribuciones de los participantes del Sistema de Retiro de la UPR. Particularmente, el **Artículo II, Sección 2.2** de la Escritura de Fideicomiso establece que la UPR afirma y reconoce la obligación de **mantener los fondos del fideicomiso** (*Trust Fund*) y que ante cualquier eventualidad unirá esfuerzos con la Junta de Gobierno (*Original Trustee*) para asegurar la solvencia y durabilidad a largo plazo del Plan de Pensiones.

Case:23-01680-ESL Doc#:26-3 Filed:06/05/23 Entered:06/05/23 18:30:50 Desc:
SJ2023CV04108 Exhibit 026 Complaint Entrada Page 8 of 54

En cuanto a la naturaleza del Sistema de Plan de Pensiones de la UPR y del *Trust Fund,* el Artículo II, Sección 2.3 de la Escritura de Fideicomiso estableció la naturaleza pública del sistema, toda vez que con fines públicos, mediante la retención de aportaciones del personal docente y no docente de la UPR, promovían la educación superior en Puerto Rico a través de la UPR. Así las cosas, **la aludida Sección 2.3 de la Escritura de Fideicomiso dispuso expresamente que *"[t]he Pension Plan and the Trust Fund are of a governmental and public nature."***

El **Artículo III, Sección 3.1** de la Escritura de Fideicomiso impone a la Junta de Gobierno (*Original Trustee*) el deber de manejar, invertir y reinvertir los activos para el uso exclusivo del Fondo del Fideicomiso y el Plan de Pensiones de los participantes, beneficiarios y retirados y proceder a distribuir el ingreso conforme a los términos y condiciones que gobiernan las disposiciones del Plan de Pensiones. Agrega dicha Sección 3.1 que la Junta de Gobierno tiene la obligación de actuar con cuidado, destreza, prudencia y diligencia como una persona prudente y razonable conduciría una empresa de esa naturaleza y en cuanto la diversificación de las inversiones del fondo del fideicomiso instruye a la Junta e Gobierno a minimizar el riesgo de grandes pérdidas a menos que bajo ciertas circunstancias fuera claramente prudente hacerlo.

En cuanto a los poderes de la Junta de Gobierno como fiduciario, **el Artículo III, Sección 3.3.3 de la** Escritura de Fideicomiso le confiere, entre otras facultades, la de tomar acciones necesarias para procurar el pago de las aportaciones de la Universidad al Plan de Pensiones. La Universidad, a través de la Junta de Gobierno ha establecido y seguirá llegando a aquellos

Case:23-1095 Document:32 Page:9 Date Filed:06/15/2023 Entry ID:6572472 Desc:
SJ2023CV06061 Appendix 05/2023 05:14pm Entrada Núm. 9 Page 9 de 54

acuerdos mutuos y satisfactorios que garanticen que las aportaciones que el empleador deba al fondo del fideicomiso se paguen.

Finalmente, el **Artículo V, Sección 5.1** de la Escritura de Fideicomiso dispone expresamente que se puede remover o reemplazar la Junta de Gobierno mediante enmienda al Acta y que la Universidad deberá nominar a la Junta de Retiro o a un subrogado legal como sucesor.

El **9 de febrero de 2017**, la Junta de Retiro emitió la *Resolución* Núm. 13 (20162017) en la que requirió a la comunidad universitaria toda la información y asuntos fiscales bajo consideración de la UPR, solicitando audiencia urgente de la Junta de Retiro en la próxima Junta de Gobierno, instando a la Junta de Gobierno a proteger la solvencia, estabilidad y perpetuidad del Fideicomiso y pidiendo que se le refiera a la Junta de Retiro todo asunto sobre el Sistema de Retiro.

El **17 de febrero de 2017** la Junta de Retiro emitió la Resolución Núm.15 (20162017) en la **que requirió que la Junta de Gobierno enmendara una certificación para que toda decisión sobre la incorporación de estrategias de inversión que realice la Junta de Gobierno requiera la aprobación de la Junta de Retiro.**

Posteriormente, **el 10 de abril de 2017, la Junta de Retiro emitió la Resolución Núm. 18 (20162017), oponiéndose a cualquier consideración de reducción a la pensión de retiro de los trabajadores puertorriqueños y requiriéndole la Junta de Gobierno** que defienda el proyecto universitario puertorriqueño y se oponga a la reducción de fondos universitarios al Sistema de Retiro.

Case: 23-03303-23-6v-01826-1 Document 05723/2 Filed 06/05/24 Page 18 of 54 Desc:
SJ2023Cv08408 Exhibit 2026 05 Complaint Entrada Page 10 Page 10 de 54

KLAN201900304 cons. con KLCE201900366                                    10

El 28 de abril de 2017, la Junta de Retiro emitió la
**Resolución Núm. 22** (2016-2017), solicitando que se redujera la
premisa actuarial del Fondo de Fideicomiso a 2.5% en el aumento
de la nómina.

Mediante Resolución de **30 de junio de 2017, la Junta de
Retiro** promulgó la **Resolución Núm. 23** (2016-2017), **en la
que aprobó que la aportación patronal de la UPR para el
año 2017 fuera de 17.56%.** Además, el 14 de julio de 2017,
la Junta de Retiro aprobó la **Resolución Núm. 1 (20172018),
en la que solicitó a la Junta de Gobierno garantizar el Plan
de Pago** establecido conforme a la Certificación Núm. 146 (2014-
2015) e instándolos a **"ejercer su fiducia propiciando medidas
a corto y a largo plazo que garanticen el repago de la deuda
actuarial y el establecimiento de gravámenes con activos
pignorados de la UPR."**

El 17 de julio de 2017, la Junta de Retiro aprobó la
Resolución Núm. 2 (20172018), en la cual urgió a la Junta de
Gobierno a establecer medidas cautelares **para evitar un
conflicto de interés de la Junta de Gobierno con el
Fideicomiso del Sistema de Retiro.** Además, **la Junta de
Retiro solicitó que se le confiera fiducia transitoria sobre el
Fondo del Fideicomiso durante la vigencia de la Ley
Promesa, ya que el Fideicomiso es acreedor de la UPR. En
esa fecha la Junta de Retiro solicitó a la Junta de Gobierno
una reunión extraordinaria para discutir la Resolución
Núm. 2 (20172018).**

Durante los días 28 al 30 de julio de 2017, la Junta de Retiro
envió correos electrónicos a la representante claustral ante la
Junta de Gobierno, la Dra. Gloria Butrón, para que la Junta de
Gobierno incluyera en el plan Fiscal de la UPR la amortización

Case: 23-1361 Document: 00118061723 Page: 11 Date Filed: 06/05/2024 Entry ID: 6651304
SJ2023CV06016 05/06/2023 05:34:11 pm Página 11 de 54
Appendix 0305 Complaint Exhibit 11 Page 11541

cerrada a cuarenta (40) años de la deuda que tiene con el Fideicomiso de Retiro y la deuda actuarial con el Fideicomiso de Retiro.

El 31 de julio de 2017, **la Junta de Gobierno aprobó el Plan Fiscal de la UPR 2017-2026.** Mediante Resolución Núm. 3 (20172018) de **4 de agosto de 2017, la Junta de Retiro manifestó a la Junta de Gobierno que la aprobación el referido Plan Fiscal tendría un impacto directo en la sostenibilidad y perpetuidad del Fideicomiso del Retiro y que era contrario al mandato de fiducia designado a la Junta de Gobierno.** La **Junta de Retiro** solicitó además, que se hiciera un estudio actuarial que midiera su impacto real en el Fideicomiso del Retiro y **solicitó que se enmendara el Plan Fiscal aprobado por la Junta de Gobierno el 31 de julio de 2017**. Igualmente, el 4 de agosto de 2017 la Junta de Retiro promulgó la resolución Núm. 4 (2017-2018) para que se atendieran las resoluciones pendientes.

El 15 de agosto de 2017, el Dr. Berríos Torres se reunió con el Presidente de la Junta de Gobierno para discutir las resoluciones pendientes. Allí acordaron que la Junta de Retiro prepararía borradores de certificación para discusión de la Junta de Gobierno y además, su Presidente se comprometió a contar con el insumo de la Junta de Retiro. El 18 de agosto de 2017 la Junta de Retiro envió carta al Presidente de la Junta de Gobierno solicitando que se atendieran sus peticiones mediante reunión extraordinaria o referéndum.

El 31 de agosto de 2017, envió carta al Presidente de la Junta de Gobierno notificándole que las peticiones de la Junta de Retiro aún estaban pendientes.

Case: 23-1342 Document: 52 Page: 12 Date Filed: 06/05/2023 Entry ID: 1230154
SJ2023CV04408 Exhibit 20 Complaint Entrada Page 12 de 54

KLAN201900304 cons. con KLCE201900366
12

Sin embargo, el **23 de octubre de 2017 la Junta de Gobierno emitió la Certificación Núm. 38 (2017-2018), en la que aprobó el Presupuesto para Gastos Operacionales, Administración de la Cartera de Inversiones y Mejoras Permanentes al Sistema de Retiro de la UPR para el año 2017-2018**, previa recomendación de la Junta de Retiro, de la Directora Ejecutiva del Sistema de Retiro y de su Comité de Asuntos de Retiro.

Mediante carta cursada el 6 de noviembre de 2017, **la Junta de Retiro interpeló a la Junta de Gobierno a ejercer su deber de fiducia y recomendó al Gobernador de Puerto Rico que eliminara el recorte presupuestario de la Universidad de Puerto Rico del Plan Fiscal.**

Así, las cosas, el 17 de noviembre de 2017, **la Junta de Retiro emitió las Resoluciones Núm. 8 y Núm. 9** (2017-2018) en las que solicitó a la Junta de Gobierno que "ante su deber de fiduciario rechace y paralice las recomendaciones de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico", entre otras cosas. Asimismo, **la Junta de Retiro solicitó a la Junta de Gobierno que como fiduciario requiriera el pago de la deficiencia del plan de amortización para el año fiscal 2016-2017.**

Aún cuando para el 17 de diciembre de 2013, la firma Cavanaugh McDonald preparó y publicó un documento titulado "Nuevas Reglas del GABS Sobre la Contabilidad del Plan de Pensión Gubernamental del 17 de diciembre de 2013", en el cual se le recomendó a la Junta de Gobierno de la UPR el adoptar la amortización cerrada de la deuda actuarial a treinta (30) años, **la Junta de Gobierno optó por una amortización cerrada a cuarenta (40) años.**

Desde finales del año 2017 la Junta de Retiro ha aprobado y emitido las siguientes resoluciones dirigidas a asesorar a la Junta de Gobierno y solicitar que tome ciertas medidas que entienden necesarias para el bienestar del Fideicomiso: Resolución #9 (2017-2019) en la que la Junta de Retiro reiteró su solicitud del pago de $6,323,554.00 adeudados por concepto de la amortización de la deuda actuarial; *Resolución* #10 (2017-2018) en la que la Junta de Retiro solicita a la Junta de Gobierno que reduzca el término de repago de la deuda actuarial con amortización cerrada de deuda actuarial a treinta (30) años; *Resolución* #17 la Junta de Retiro reitera la necesidad de reducir el término de la amortización cerrada de deuda actuarial a treinta (30) años; *Resolución* #19 (2017-2018) la Junta de Retiro reitera la necesidad de la UPR de cumplir con el pago de $6,678,621.00 adeudados; *Resolución* #4 (2018-2019) en la que la Junta de Retiro aprueba el *Estudio Actuarial* al 30 de junio de 2017 y se ratifica la recomendación de modificar el término de amortización de la deuda a treinta (30) años; *Resolución* #5 82018-2019) en la que la Junta de Retiro aprueba las premisas actuariales de aumento de nómina para los años 2018-2019.

Además, la Junta de Retiro ha enviado las siguientes comunicaciones a la Junta de Gobierno y/o a sus miembros: carta de 31 de agosto de 2017 cursada por el Presidente de la Junta de Retiro a la Junta de Gobierno de la UPR en la que solicitó el pago de $6,700,000.00 de aportación patronal conforme al plan de pago de amortización cerrada, entre otras cosas; carta de 17 de noviembre de 2018, cursada a la Junta de Gobierno, en la que la Junta de Retiro solicitó que promoviera la eliminación de la política de no reclutamiento de la UPR ante el efecto negativo que causa sobre el Fideicomiso; carta de 27 de agosto de 2018 cursada por

Case: 23-0863-23-5v-01261-Bo Filed: 05/23/23 Entered: 06/05/23 Page: 14 of 54 Desc:
SJ2023 cv04408 Exhibit 2026 Complaint or Entrada Page 14 of 54

KLAN201900304 cons. con KLCE201900366                    14

el Dr. Eduardo Berríos a la Junta de Gobierno en la que los instó a ejercer su rol fiduciario y a velar por la protección del Fideicomiso; carta de 24 de octubre de 2018 cursada por el Dr. Eduardo Berríos a la Junta de Gobierno, en la que reiteró su oposición al Plan Fiscal propuesto.

La Junta de Gobierno no ha respondido a las Resoluciones de la Junta de Retiro ni a estas cartas y/o correos electrónicos.

De igual forma se han realizado varias diligencias para cobrar los pagos adeudados conforme a la Certificación Núm. 146, la cual estableció el plan de amortización cerrada de la deuda a cuarenta (40) años.

El 30 de agosto de 2018 la Junta de Gobierno de la UPR emitió la Certificación Núm. 10 (2018-2019), mediante la cual creó la Oficina de Transformación Institucional de la Universidad de Puerto Rico (OTI) a la que le confirió poderes para desarrollar, monitorear, asesorar e implementar proyectos de transformación en el Fideicomiso del Retiro, todo esto sin la intervención o autorización de la Junta de Retiro.

En igual fecha, el 30 de agosto de 2018, la Junta de Gobierno emitió la Certificación Núm. 13 (2018-2019), la cual modificó el presupuesto para Gastos Operacionales, Administración de la Cartera de Inversiones y Mejoras Permanentes del Sistema de Retiro de la Universidad de Puerto Rico, referido por la Junta de Retiro para su debida certificación el 29 de junio de 2019. La modificación a dicho presupuesto consistió en la eliminación de las partidas presupuestarias para servicios profesionales de fines legales y comunicación del Fideicomiso

Así las cosas, el **21 de septiembre de 2018 el Sistema de Retiro envió una factura al cobro Núm. 17-035 a la Oficina de finanzas de la Administración Central de la UPR,**

Case: 23-1524, Document 61, Filed: 06/05/23, Page 1 of 54    Desc:
SJ2023CV04496 05/04/2023 05:14:14 pm Entrada Núm. 4 Página 15 de 54

KLAN201900304 cons. con KLCE201900366                    15

**en la que requirió el pago de $6,973,397.07 en concepto del total de atrasos en los pagos de las remesas de la amortización cerrada de la deuda actuarial de la UPR. Sin embargo, estos intentos de cobro no recibieron respuesta.**

La Junta de Retiro emitió además, la *Resolución # 6 (2018-2019)*, en la cual le requiere a la Junta de Gobierno que declare nulo e inválido el Presupuesto del Sistema de Retiro para el año Fiscal 2018-2019. Mediante carta de 1 de octubre de 2018, la Lcda. Magdalisse Ramos Acosta, Secretaria Ejecutiva de la Junta de Gobierno, comunicó que el Comité de Asuntos de Retiro de la UPR consideró la Resolución #6 y aclaró que la Junta de Retiro no está facultada para contratar servicios que no han sido presupuestados.

Asimismo la Junta de Retiro emitió la *Resolución Núm. 7 (2018-2019)* en la que solicitó a la Junta de Gobierno que modificara la Certificación Núm. 10 (2018-2019) para que no fuera aplicable al Fideicomiso. Dicha solicitud no fue atendida.

En el interín, el 6 de septiembre de 2018, la Junta de Gobierno suscribió un **contrato para la prestación de servicios profesionales con la firma BDO Puerto Rico**, P.S.C. (BDO), "*para que le asesore en cuanto a las mejores alternativas para la transformación del sistema de pensiones de la Universidad de Puerto Rico, para poder implementar el Plan Fiscal de la Universidad.*"

Mediante la QUINTA cláusula del Contrato, la Junta de Gobierno se comprometió a lo siguiente:

> [R]etribuir a [BDO] por los servicios que brinde en la ejecución de este contrato a razón de DOSCIENTOS DÓLARES ($200.00) por hora por servicios prestados por los Socios, gerente de Proyecto y Consultor de [BDO], hasta un máximo de mil doscientos cincuenta 81,2509 horas; DOSCIENTOS DÓLARES ($200.00) por hora por servicios prestados por el Economista, hasta un máximo de ciento cincuenta (150) horas; y CIEN Dólares

Case:23-00830-13-6v-01361-Bo Filed:05/23/2Biled:06/05/2/Page:16 of 64 Desc:
SJ2023Cvdend08 ExhibitsC0 Complaint Entra dadPage: 16 of 54

KLAN201900304 cons. con KLCE201900366

16

($100.00) por hora por servicios prestados por el abogado
externo hasta un máximo de doscientas (200) horas.

[..] la cuantía total máxima a desembolsarse bajo este contrato
no excederá de TRESCIENTOS MIL DÓLARES ($300,000.00)
procedentes […] del presupuesto de [la Junta de Gobierno].

El **5 de noviembre de 2018 la Junta de Retiro presentó**

**ante el TPI** *Interdicto Provisional y Permanente* **en el cual**

**solicitó la destitución de la Junta de Gobierno como**

**fiduciario del Fideicomiso de Retiro de la UPR,** por éstos no

proteger los intereses de los fideicomisarios y beneficiarios del

Fideicomiso al aceptar aportaciones patronales al Fondo para el

Fideicomiso de Retiro, menores a las establecidas.

**Dos días más tarde, mediante carta cursada el 7 de**

**noviembre de 2018, al Dr. Eduardo Berríos Torres, la Lcda.**

**Zoraida Buxó, Vice Presidenta de la Junta de Gobierno, le**

**expresó la intención de enmendar el** *Reglamento del*

*Sistema de Retiro***;** le envió copia del borrador y le solicitó sus

comentarios y recomendaciones. El **9 de noviembre de 2018** el

Dr. Berríos Torres envió carta al Lcdo. Walter Alomar Jiménez,

Presidente de la Junta de Gobierno, en la que además de cursar

recibo de la carta de la Lcda. Zoraida Buxó le **exhortó al cese y**

**desista de cualquier actuación encaminada a la aprobación**

**de enmiendas al** *Reglamento del Sistema de Retiro***.**

Ese mismo día, el **9 de noviembre de 2018**, luego de

presentada la causa de acción, la Junta de Gobierno **aprobó la**

**Certificación Núm. 39 (2018-2019),** mediante la cual el

Secretario de la Junta de Gobierno certifica lo siguiente:

La Junta de Gobierno, mediante Referéndum efectuado del 2 al 5
de noviembre de 2018, luego de recibir la información del director
de Finanzas de la UPR en relación a la aportación patronal al
Sistema de Retiro para los años 2016-2017 y 2017-2018, con el
endoso del Presidente de la UPR, y de acuerdo con la
recomendación de sus Comités de Asuntos del Sistema de Retiro
y Comité de asuntos Financieros, acordó:

**Autorizar la transferencia al Sistema de Retiro por la**
**cantidad de $10 millones.**

> **Establecer <u>que se reconoce una deuda de 43 millones del Sistema de Retiro de la Universidad por lo cual, la transferencia neta será por la cantidad de $7 millones.</u>**
>
> **Que el acuerdo tiene el propósito de <u>finiquitar las reclamaciones del Sistema de Retiro por los años 2016-2017 y 2017-2018.</u>**
>
> *Que la transferencia al sistema de Retiro por la cantidad de $7 millones se llevará a cabo dentro de los próximos 10 días laborables.*

Conforme a la Certificación Núm. 146, a la Universidad de Puerto Rico le correspondía pagar $79,155,377.00 en concepto de su aportación patronal al Fideicomiso para el año 2016-2017. Sin embargo, la aportación recibida fue de $72,181,980.00. así las cosas, para el año 2016-2017 existe una insuficiencia de $6,973,397.00.

Igualmente, según la Certificación Núm. 146, a la Universidad de Puerto Rico le correspondía pagar $81,530,038.00 en concepto de su aportación patronal al Fideicomiso para el año 2017-2018. Sin embargo, bajo el Plan Fiscal aprobado para dicho año, a la Universidad le correspondía pagar $74,559,000.00. A pesar de dicha reducción, la aportación recibida para ese año fue de $68,556,324.00. Así es que para el año 2017-2018 existe una insuficiencia de $6,042,676.00 en comparación con la cantidad correspondiente bajo el Plan Fiscal y de $12,973,714.00 en comparación con la cantidad esperada bajo la Certificación Núm. 146.

**El 26 de noviembre de 2018,** ante el TPI tanto la Junta de Gobierno de la UPR como la Universidad de Puerto Rico presentaron **mociones de desestimación durante el trámite ordinario del caso. El 27 de noviembre de ese año se llevó a cabo una vista argumentativa en el caso SJ2018CV09660, en torno a si Junta de Gobierno incumplió con sus deberes como fiduciario el Fondo del Fideicomiso para el Retiro.**

Case:23-03690-23-5v-0108261-Bo Filed:05/23/23 Entered:06/15/23 Page:18 of 54 Desc:
SJ2023Apvenx08 Exhb/2023 Complaint Dkh-lelaPage. 18 of 54

Tras varios incidentes procesales, el **18 de diciembre de 2018** se celebró la vista Evidenciaria ante el foro primario en la cual las partes estipularon la prueba, y argumentaron sus posiciones. Además la Junta de Retiro presentó la siguiente prueba testifical: (1) Testimonio del Dr. Eduardo Berríos Torres, Presidente de la Junta de Retiro del Fideicomiso de la UPR y (2) Testimonio del Sr. José Fernández, perito actuario contratado por la UPR.

Sin embargo, en el interín, el **30 de noviembre de 2018 la Junta de Gobierno aprobó las enmiendas al Reglamento de Retiro** con una votación de seis (6) a favor y cuatro (4) en contra. Mediante dichas enmiendas al *Reglamento de Retiro* **se modificaron los deberes y facultades de la Junta de Gobierno y la Junta de Retiro, así como la relación entre éstas.** Particularmente, el Artículo VIII Sección 3(c) fue enmendado para disponer que "[l]a Junta de Gobierno, en su capacidad como fiduciario del Sistema estará a cargo de la administración y disposición del Fondo, con el director ejecutivo a cargo de su manejo diario". Además, se enmendó el Artículo XI Sección 3(a) y Sección 5 para añadir explícitamente que **la Junta de Retiro actuará como asesora a la Junta de Gobierno y le responderá a ésta, pero que las recomendaciones de la Junta de Retiro a la Junta de Gobierno no serían obligatorias.**

Mientras tanto, el **4 de enero de 2019,** ambas partes presentaron sus respectivos memorandos de derecho ante el foro primario en el **caso civil núm. SJ2018CV09660**.

Mediante *Resolución* **de 22 de febrero de 2019, emitida en el caso civil núm. SJ2018CV09660**, el foro primario declaró *No Ha Lugar* la solicitud de *injunction* preliminar presentada por

la Junta de Retiro y ordenó la reasignación del caso a la sala civil competente para el trámite ordinario de la causa de acción de *injunction* permanente en el que, tras un descubrimiento de prueba se determinara si procedía o no la destitución de la Junta de Gobierno, como fiduciario del Fideicomiso del Retiro del Gobierno de Puerto Rico . Concluyó el TPI que la evidencia y los argumentos presentados no permitían concluir en la etapa de los procedimientos del *injunction* preliminar que la Junta de Gobierno hubiese incumplido de forma sustancial con sus deberes fundamentales de lealtad hacia los fideicomisarios. Concluyó, además, el TPI que la propia Junta de Gobierno reconoció que cualquier daño se podría reparar mediante aportaciones futuras.

Concluye, además, que las acciones tomadas por la Junta de Gobierno referente a la Certificación Núm. 39 (2018-2019) en la que **aceptó un pago menor como aportación patronal de la UPR al Sistema de Retiro que tuvo el propósito de finiquitar las reclamaciones del Sistema de Retiro para los años 2016-2017 y 2017-2018, no constituyen incumplimiento sustancial de la Junta de Gobierno con su deber de fiducia, que amerite su destitución sino un acto de naturaleza administrativa.**

En igual fecha, el **22 de febrero de 2019, el foro primario, emitió Sentencia en el caso civil núm. SJ2018CV10382**. Mediante dicha Sentencia el TPI declaró *No Ha Lugar* la Demanda *de Interdicto Preliminar y Permanente* presentada el 5 de noviembre de 2018, por la Junta de Retiro y *Con Lugar* la *Solicitud de Desestimación* presentada por la Junta de Gobierno.

En esencia, concluyó el foro primario, que la Junta de Gobierno está facultada por la Ley de la Universidad de Puerto

Case:23-03003-23-8v-01826 1-Bo Filed:05/23/2Bil Enter:06/05/2 Page:20 of 54   Desc:
SJ2023 Appendix Exhibit 2023 Complaint D-h 1-1 Page 20 Pg 54 Page 20 of 54

Rico y por la Escritura de Fideicomiso para determinar los poderes que delegará a la Junta de Retiro; que en el ejercicio de dicha facultad, la apelada enmendó el **Reglamento de Retiro** mediante el procedimiento establecido y que en lo sustantivo, el TPI concluyó que las enmiendas objetadas por la Junta de Retiro son cónsonas con el derecho aplicable y con la Escritura de Fideicomiso. Concluye el TPI que las enmiendas al reglamento de Retiro mediante la Certificación Núm. 47 no contravienen ni la Ley de Fideicomisos ni la escritura de Fideicomiso.

Inconforme con ambos dictámenes, la Junta de Retiro presentó ante este Tribunal de Apelaciones los recursos de epígrafe, los cuales consolidamos.

En la Petición de *Certiorari* (KLCE20190366), presentada el 21 de marzo de 2019, la Junta de Retiro señaló la comisión de los siguientes errores por parte del foro primario en la *Resolución* recurrida, emitida el 22 de febrero de 2019 en el caso civil núm. SJ2018CV09660;

1. EL TRIBUNAL ERRA AL EXPRESAR QUE LA EVIDENCIA PRESENTADA NO MUESTRA INCUMPLIMIENTO SUSTANCIAL DE SUS DEBERES, LA EVIDENCIA ES SUFICIENTE, AMPLIA Y DE NATURALEZA SUSTANCIAL.

2. EL TRIBUNAL ERRA AL DETERMINAR QUE CUANDO LA UPR SELECCIONA E IMPAGA UNA AMORTIZACIÓN DE LA DEUDA DESFAVORABLE AL FIDEICOMISO, Y FAVORABLE A LA UPR, EL TRIBUNAL NO PUEDE INCIDIR SOBRE LA DETERMINACIÓN DE SI ES UN ACTO QUE (1) INCIDE EN LOS INTERESES PERSONALES DE LA UPR Y SON INCOMPATIBLES CON EL FIDEICOMISO (2) ES UN ACTO ADMINISTRATIVO NEGLIGENTE (3) ES UN INCUMPLIMIENTO SUSTANCIAL DE SUS OBLIGACIONES.

3. EL TRIBUNAL ERRA AL DETERMINAR QUE LA ADMINISTRACIÓN INEFECTIVA E IRRESPONSABLE DEMOSTRADA POR LOS HECHOS DETERMINADOS POR EL PROPIO TRIBUNAL ES UNA MERA INEFICIENCIA QUE NO AFECTA EL FIDEICOMISO.

4. EL TRIBUNAL ERRA AL INDICAR QUE NO SE PRESENTÓ PRUEBA DE QUE LA CAPACIDAD DEL PAGO DE LAS

Case:23-2003-23-6-V-0182610-Document:05123/29 Filed:05/23/29 Page:130 of 64    Desc:
SJ2023CV04061 06/2023 05:14 Complaint Dktdat Núm Page Page 21 de 54

PENSIONES DEL FIDEICOMISO SE AFECTAN CON EL IMPAGO DE LA UPR, LA PRUEBA FUE AMPLIA.

5. EL TRIBUNAL ERRA AL EXPRESAR QUE EL DAÑO DEL IMPAGO DE LA DEUDA ES REPARABLE AL INDICAR QUE LA SITUACIÓN FISCAL DE LA UPR ES PRECARIA ANTE PROMESA Y LAS CONDICIONES DEL HURACÁN MARÍA, LO CUAL AÑADE RIESGO AL REPAGO DE LA DEUDA E IMPOSIBILITA EL RECOBRO DE LA MISMA.

De igual forma, el 21 de marzo de 2019, la Junta de Retiro presentó Apelación (KLAN20190304) y allí señaló la comisión de los siguientes errores por parte del foro primario, en la *Sentencia* apelada, emitida el 22 de febrero de 2019 en el caso civil núm. SJ2018CV10382:

1. EL TPI ERRÓ AL DETERMINAR QUE LA CERTIFICACIÓN NÚM. 47 (2018-2019) ("CERTIFICACIÓN 47") <u>APROBADA Y PUBLICADA POR LA JUNTA DE GOBIERNO EL DÍA 30 DE NOVIEMBRE DE 2018</u>, ES UN DOCUMENTO LÍCITO QUE CONTIENE UNA POLÍTICA INTERNA DE LA UPR SIN MÁS PROPÓSITO QUE EL DE ENMENDAR EL "REGLAMENTO DEL SISTEMA DE RETIRO DE LA UPR" Y AL CUAL NO LE APLICAN LOS REQUISITOS REGLAMENTARIOS DE LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME DEL GOBIERNO DE PUERTO RICO, LEY NÚM. 38 DE 30 DE JUNIO DE 2017, SEGÚN ENMENDADA[2] (REFERIDA POR SUS SIGLAS COMO LA "LPAU" O LA LEY-38-2017").

2. EL TPI ERRÓ AL DETERMINAR QUE (A) A LA FECHA DEL OTORGAMIENTO DE LA ESCRITURA DE FIDEICOMISO NO SE LIMITARON LOS PODERES DE LA JUNTA DE GOBIERNO COMO CUERPO RECTOR DE LA UPR SOBRE EL FIDEICOMISO Y LOS TORNÓ INAPLICABLES AL MISMO, INCLUSIVE LA DESIGNACIÓN DE LA JUNTA DE GOBIERNO COMO ENTE FIDUCIARIO DEL FIDEICOMISO DEL RETIRO UPR AUTOMÁTICAMENTE DELIMITÓ SUS FACULTADES Y DEBERES A LOS CONTENIDOS EN LA **ESCRITURA DE FIDEICOMISO** Y A LAS DISPOSICIONES ATRIBUIBLES AL ROL FIDUCIARIO A TENOR CON LA LEY 212-2019, POR TAL RAZÓN ENTENDEMOS **QUE LA JUNTA DE GOBIERNO INCURRIÓ EN ACTUACIONES "ULTRA VIRES" AL FORMULAR POR MEDIO DE POLÍTICAS INTERNAS DE LA "UPR", QUE VIOLAN LOS REQUISITOS DE LA LPAU, ENMIENDAS AL REGLAMENTO DEL FIDEICOMISO DE RETIRO UPR, YA QUE ÉSTE CONSTITUYE UN ENTE SEPARADO DE LA UPR; Y (B) EL TPI EQUÍVOCAMENTE FAVORECIÓ EL QUE UNA POLÍTICA INTERNA DE LA UPR (CERTIFICACIÓN 47) REDUJERE LOS PODERES DE LA JUNTA DE RETIRO E INCLUSIVE IMPLEMENTARA LA IMPOSICIÓN DE MEDIDAS DISCIPLINARIAS CONTRARIAS A DISPOSICIONES VINCULANTES CON FUERZA DE LEY A TENOR CON LA LEY 219-2012 Y EL ARTÍCULO 3 H(15)[3] DE LA LEY 1-1966,** QUE COMPRENDEN VISOS DE

---

[2] 3 LPRA sec. 9601 *et seq.*
[3] 18 LPRA sec.601 *et seq.*

ARBITRARIEDAD Y CAPRICHOSIDAD EXCLUSIVAMENTE DISEÑADAS PARA LOS FIDEICOMISARIOS QUE SEAN MIEMBROS DE **LA JUNTA DE RETIRO QUE ES LA REPRESENTANTE LEGÍTIMA DE LOS FIDEICOMISARIOS DEL RETIRO UPR, TODO ELLO EN CONTRAVENCIÓN DEL ROL REQUERIDO AL FIDUCIARIO BAJO LA LEY 219-2012** Y ATENTANDO CONTRA LA CARTA DE DERECHOS DE NUESTRA CONSTITUCIÓN Y SU ENUNCIADO AL DERECHO A LA IGUAL PROTECCIÓN DE LAS LEYES.

Por su parte, la UPR y su Junta de Gobierno comparecen ante este Tribunal de Apelaciones mediante *Oposición a Petición de Certiorari*. Allí sostienen que la Junta de Retiro no ha presentado alegación alguna que esté relacionada con el manejo de los fondos y/o activos depositados en el fideicomiso de Retiro de la UPR y que las alegaciones basadas en las aportaciones al Sistema de Retiro con el pago de la deuda actuarial a dicho sistema de Retiro no tienen relación alguna con el deber fiduciario de la Junta de Gobierno como fiduciario del Fideicomiso del Fondo de Retiro de la UPR.

En cuanto a los señalamientos de error presentados por la Junta de Retiro en la Apelación, sobre la Sentencia emitida en el caso SJ2018CV10382, referente a la Certificación 47, cuyo propósito es enmendar el Reglamento del Sistema de Retiro de la UPR, la Junta de Gobierno y la UPR se oponen. En ajustada síntesis, estas sostienen que el documento es lícito; que su política interna es enmendar el Reglamento del Sistema de Retiro de la UPR, y que a dicho documento no le aplican los requisitos reglamentarios de la LPAUG. Asímismo sostienen que a la fecha del otorgamiento de la Escritura de Fideicomiso no se limitaron los poderes de la Junta de Gobierno como cuerpo rector de la UPR sobre el Fideicomiso

El 19 de julio de 2019 ordenamos a la Junta de Retiro presentar *Alegato Suplementario* sobre la evidencia testifical presentada ante el foro primario, los días 18 y 19 de diciembre de 2019 y a la UPR y a su Junta de Gobierno a presentar sus correspondientes alegaciones.

El 8 de agosto de 2019, la Junta de Retiro, presentó Suplemento a Petición de *Certiorari* en la que además de discutir la prueba oral desfilada aclaró la naturaleza del testimonio del Sr. José Fernández, el cual calificó de pericial y estipulado por las partes.[4] Además, en dicho *Alegato Suplementario*, la Junta de Retiro sostiene los siguientes señalamientos de error:

1. EL TRIBUNAL ERRA AL EXPRESAR QUE LA EVIDENCIA PRESENTADA NO MUESTRA INCUMPLIMIENTO SUSTANCIAL DE LAS OBLIGACIONES DEL FIDUCARIO, LA EVIDENCIA ES SUFICIENTE, AMPLIA Y DE NATURALEZA SUSTANCIAL.

2. EL TRIBUNAL ERRA AL DETERMINAR QUE CUANDO LA UPR SELECCIONA E IMPAGA UNA AMORTIZACIÓN DE LA DEUDA DESFAVORABLE AL FIDEICOMISO, Y FAVORABLE A LA UPR, EL TRIBUNAL NO PUEDE INCIDIR SOBRE LA DETERMINACIÓN DE SI ES UN ACTO QUE (1) INCIDE EN LOS INTERESES PERSONALES DE LA UPR Y ES INCOMPATIBLE CON EL FIDEICOMISO (2) ES UN ACTO ADMINISTRATIVO NEGLIGENTE; O (3) ES UN INCUMPLIMIENTO SUSTANCIAL CON SUS OBLIGACIONES.

3. EL TRIBUNAL ERRA AL DETERMINAR QUE LA ADMINISTRACIÓN INEFECTIVA E IRRESPONSABLE DEMOSTRADA POR LOS HECHOS DETERMINADOS POR EL PROPIO TRIBUNAL ES UNA MERA INEFICIENCIA QUE NO AFECTA AL FIDEICOMISO.

4. **EL TRIBUNAL ERRA AL INDICAR QUE NO SE PRESENTÓ PRUEBA DE QUE LA CAPACIDAD DE PAGO DE LAS PENSIONES DEL FIDEICOMISO SE AFECTAN CON EL IMPAGO DE LA UPR, LA PRUEBA FUE AMPLIA**.

---

[4] Véase págs. 16-24 de la *Transcripción de la Vista* celebrada el 18 de diciembre de 2018.

Case:23-1263, Document 61-Filed:05/23/2023, Filed: 06/05/23, Page:24 of 54, Desc:
SJ2023, Appendix Exhibit 2020, Complaint D En trada, Page: 24 of 54

Mediante *Resolución* de 4 de mayo de 2020 declaramos *No Ha Lugar* la *Urgente Moción en Auxilio de Jurisdicción y Solicitud de Paralización* presentada por la Junta de Retiro.

II

A.

El recurso extraordinario de *injunction* es un mandamiento judicial en virtud del cual se requiere que se ordene a una persona dejar de hacer, o de permitir que se haga, determinada cosa que infrinja o perjudique el derecho de otra. Este recurso fue adoptado del sistema de equidad inglés y se utiliza principalmente en casos donde no hay otro remedio adecuado en ley. Nuestro ordenamiento jurídico cuenta con tres modalidades de este tipo de recurso que son: el entredicho provisional, el injunction preliminar y el injunction permanente. *Next Step Medical Co, Inc v. Bromedicon, Inc.; Implantes & Seguros Médicos,* 190 DPR 474, 485-486 (2014).

El remedio extraordinario del *injunction* se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico. La eficacia del interdicto descansa en su naturaleza sumaria y en su pronta ejecución. Al determinar si procede otorgar un interdicto permanente, el tribunal debe considerar los criterios siguientes: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley, (3) el interés público involucrado, y (4) el balance de equidades. Estos criterios no son de naturaleza absoluta, sino de directrices que encausan la discreción del tribunal al determinar si la evidencia justifica el interdicto. *Plaza Las Américas v. N&H,* 166 DPR 631, 643-644 (2005).

Case: 23-01261    Document 05-2    Filed 06/05/2    Page 25 of 54    Desc:
SJ2023CV... Appendix 06/2023 05 Complaint Dictada Número 25 of 54    Page 25 de 54

KLAN201900304 cons. con KLCE201900366                    25

### B.

La Ley Núm. 1 de 20 de enero de 1966, Ley de la Universidad de Puerto Rico, 18 LPRA sec. 601, *et seq.*, según enmendada, [en adelante, Ley de la UPR] se creó con "el propósito de reorganizar la [UPR], reafirmar y robustecer su autonomía y facilitar su continuo crecimiento". Véase, Artículo 1, Ley de la UPR. En nuestra jurisdicción, la Universidad de Puerto Rico constituye una institución vital y de suma importancia para el pleno desarrollo del sistema educativo y la prosperidad de la Isla. *U.P.R. v. Laborde Torres y otros I*, 180 DPR 253, 300 (2010).

El Sistema de Retiro de la Universidad de Puerto Rico ("SR-UPR") se creó por disposición de la Ley Núm. 135 del 7 de mayo de 1942, posteriormente derogada por la Ley Núm. 1 del 20 de enero de 1966, ambas conocidas como la "Ley de la Universidad de Puerto Rico", 18 LPRA sec. 601 *et seq.*, ("Ley de la UPR"). En ese sentido, el SR-UPR nace como resultado del cumplimiento de las obligaciones que la ley orgánica de la UPR le impone a la actual Junta de Gobierno, cuerpo encargado de administrar y gobernar la Universidad de Puerto Rico. Específicamente, el Art. 3 (H) consagra los deberes y atribuciones de la Junta de Gobierno y, en lo pertinente, el inciso (15) establece la obligación de la Junta de "[m]antener un plan de seguro médico y un sistema de pensiones para todo el personal universitario, el cual incluirá un plan de préstamos sin interponerse a los poderes de la Junta de Retiro". Art. 3 (H) (15) de la Ley de la UPR, 18 LPRA sec. 602. A su vez, como corolario de lo anterior, se adoptó el "Reglamento General del Sistema de Retiro" de la Universidad de Puerto Rico, ("RGSR-UPR").[5]

---

[5] Cabe señalar que el Consejo de Educación Superior estableció el Reglamento General del Sistema de Retiro original a través de la aprobación de una

Case:23-03038-23-Sv-01 3261-BocFile:n 05/23/2 Bile Entered:06/05/23 Page 26 of 54    Desc:
SJ20230qpen 08 Ex/05/2023 05 Complaint Entrada Page 26 Page 26 de 54

Surge del reglamento antes aludido que:

El Sistema de Retiro es un plan de jubilación de beneficios definidos que cubre sustancialmente a todos los empleados que trabajan a tiempo completo y a los empleados contratados por un período de más de nueve meses por la Universidad de Puerto Rico. [...].

El propósito fundamental del Sistema de Retiro de la Universidad de Puerto Rico es brindar beneficios a los participantes, permitiéndoles así acumular reservas para ellos y sus dependientes y poder enfrentar los riesgos que representan la incapacidad, la muerte, la terminación de empleo y la edad avanzada, con el objetivo de atraer a las personas para que presten sus servicios profesionales a la Universidad y, por ende, mejorar todos los aspectos del servicio, tanto el académico como el administrativo.[6]

Por otra parte, el Art. XI de dicho reglamento establece todo lo concerniente a la administración del Sistema de Retiro. En lo pertinente al caso que nos ocupa, el referido artículo dispone lo siguiente:

**Sección 1 – Junta de Retiro**
a. Se establece una Junta de Retiro que será directamente responsable a la [Junta de Gobierno] [...].
[...]
**Sección 3 – Deberes y Facultades de la Junta**
a. Recomendar [a la Junta de Gobierno] candidatos para cubrir el puesto de Director Ejecutivo, a tenor con lo dispuesto en la Sección 8-b de este Artículo.
b. Contratar aquellos servicios profesionales que considere necesario para el desempeño de sus funciones.
c. Revisar y recomendar [a la Junta de Gobierno] el presupuesto anual para la administración del Sistema, el cual será cargado al Fondo.
d. Requerir y recibir de la Universidad y del Sistema toda aquella información que esté disponible y considere necesaria para el desempeño de sus funciones.
**e. Considerar y tomar acción sobre los asuntos que traiga a su atención el Director Ejecutivo o cualquiera de los miembros de la Junta.**
f. Fijar el tipo de interés en los préstamos personales e hipotecarios, y en la acreditación de servicios a cobrarse por el Sistema dentro de los parámetros establecidos por [la Junta de Gobierno].
g. Analizar y recomendar [a la Junta de Gobierno] las tasas de aportación individual y patronal a pagarse al Sistema de Retiro.
h. Aprobar, con la recomendación de los Actuarios, aquellas tablas y premisas actuariales necesarias

---

Resolución, cuya resolución también estableció el Sistema de Retiro. Posteriormente, dicho Reglamento fue objeto de múltiples enmiendas aprobadas mediante Certificaciones del cuerpo encargado de gobernar la Universidad de Puerto Rico, llámase Consejo de Educación Superior o Junta de Síndicos, actualmente renombrado Junta de Gobierno.
[6] Art. XIII, pág. 54 del Reglamento General del Sistema de Retiro.

Case:23-0383-23-8v-01861-B0Filen:05/23/2BiEerd:06/65/2Page:12730164  Desc:
SJ2023CVppe0dik1Eb5r0023 05 Ctem0lpirintEfktadd4 N Page 1 Page 5 42 de 54

KLAN201900304 cons. con KLCE201900366                              27

para la evaluación del Sistema y la determinación de beneficios.

i. Evaluar la labor realizada por el Director Ejecutivo cada tres años y someter un informe escrito [a la Junta de Gobierno] sobre dicha evaluación.

j. Someter recomendaciones [a la Junta de Gobierno] sobre las normas que regirán la inversión de los activos del Sistema.

**k. Resolver las apelaciones radicadas por los participantes sobre las decisiones del Director Ejecutivo. Cuando las determinaciones de la Junta revoquen o modifiquen las del Director Ejecutivo, éste podrá solicitar revisión por [la Junta de Gobierno].**

l. Considerar y recomendar [a la Junta de Gobierno] la acción a tomar sobre cualquier enmienda a este Reglamento propuesta por la Junta [de Retiro], o que le refiera [la Junta de Gobierno] o cualquier otro Cuerpo o persona.

m. Aprobar un reglamento interno, sujeto a la ratificación de [la Junta de Gobierno].

n. Asesorar [a la Junta de Gobierno] sobre cualquier otro asunto relacionado con el Sistema, a requerimiento de [la Junta de Gobierno] o por iniciativa propia.

[…]

**Sección 8 – Director Ejecutivo**

a. La administración operacional del Sistema estará a cargo de un(a) Director(a) Ejecutivo(a) el(la) cual tendrá la responsabilidad y autoridad para tomar en primera instancia todas las decisiones relacionadas con el mismo, excepto aquellas que le han sido recomendadas a la Junta [de Retiro] o que se haya reservado [la Junta de Gobierno]. Servirá, además, como Secretario(a) de la Junta [de Retiro] con voz pero sin voto.

[…]

c. Deberes

    […]

    (4) **Actuará en la revisión, aprobación o rechazo de las solicitudes de pensiones y beneficios**, así como de las solicitudes de préstamos hipotecarios o personales que radiquen los participantes del Sistema.

[…]

    (15) Traerá a la atención de la Junta [de Retiro], para su decisión, cualquier solicitud radicada por un participante del Sistema que no esté cubierta por los procedimientos establecidos. (Énfasis suplido). Art. XI del Reglamento General del Sistema de Retiro, según enmendado.

**El 30 de noviembre de 2018,** pendiente de adjudicación la Solicitud de Interdicto presentada por la Junta de Retiro en torno al incumplimiento de la Junta de Gobierno con su deber de fiducia, **la Junta de Gobierno aprobó la Certificación Núm. 47 (2018-019) con el fin de enmendar el *Reglamento del Sistema de Retiro*.**

Case: 23-1261 Document 05223 Date Filed: 06/05/24 Page: 28 of 54
SJ2023Cv05499 19/05/2023 05:14:17 pm Entrada Núm. 28 Página 28 de 54

Mediante **Certificación Núm. 47 (2018-019)** la Junta de Gobierno enmendó el *Reglamento de Retiro* y dichas enmiendas **modificaron los deberes y facultades de la Junta de Gobierno y la Junta de Retiro, así como la relación entre éstas.** Particularmente, el Artículo VIII Sección 3(c) fue enmendado para disponer que "[l]a Junta de Gobierno, en su capacidad como fiduciario del Sistema estará a cargo de la administración y disposición del Fondo, con el director ejecutivo a cargo de su manejo diario". Además, se enmendó el Artículo XI Sección 3(a) y Sección 5 para añadir explícitamente que **la Junta de Retiro actuará como asesora a la Junta de Gobierno y le responderá a ésta, pero que las recomendaciones de la Junta de Retiro a la Junta de Gobierno no serían obligatorias.**

Las enmiendas añadieron al Artículo XI la Sección 1 y 3. La Sección 1 enumera las funciones de la Junta de Gobierno como sigue:

**Sección 1- Junta de Gobierno**

La Junta de Gobierno, en su capacidad como fiduciario del Sistema, será responsable por la administración y disposición del Sistema. Entre las funciones de la Junta de Gobierno se encuentran:

    a. Aprobar el presupuesto anual del Sistema de Retiro
    b. Nombrar un(a) Director(a) Ejecutivo(a), que será un puesto de confianza que responderá a la Junta de Gobierno, para el manejo del Sistema de Retiro
    c. Supervisar el desempeño del (la) Director(a) Ejecutivo(a)
    d. Evaluar el rendimiento del Sistema de Retiro y tomar las medidas necesarias para maximizar el mismo y asegurar su futura estabilidad.
    e. Considerar, acoger y/o rechazar las recomendaciones de la Junta de Retiro.
    f. Aprobar un reglamento interno para la Junta de Retiro
    g. Aprobar las medidas que sean necesarias para la administración del Sistema de Retiro.
    h. Llevar a cabo las acciones disciplinarias contra miembros de la Junta de Retiro.
    i. Cualquier otra función que este Reglamento le asigne a la Junta de Gobierno.

Case: 23-1261 Document: 00118061054 Page: 29 Date Filed: 06/05/2023 Entry ID: 6572360
SJ2023CV04906 10/06/2023 05:14:01 pm Entrada Núm. 29 Página 29 de 54

KLAN201900304 cons. con KLCE201900366                    29

La reenumerada Sección 7 del artículo XI, que rige los deberes, derechos y limitaciones de los miembros de la Junta de Retiro se modificó. La Sección 7 (a) ahora dice expresamente que los miembros de la Junta de Retiro se tienen que comprometer a "[a]ctuar conforme las funciones y dentro de las limitaciones establecidas en el Reglamento". Además, a la Sección 7 (b) se le añadió establece lo siguiente y además, el proceso disciplinario:

> b. El incumplimiento de los deberes señalados en este Artículo será causa para acción disciplinaria por la Junta de Gobierno. El proceso disciplinario podrá ser iniciado a petición del (la) Director (a) Ejecutivo (a), a un miembro de la Junta de Retiro o por iniciativa propia de la Junta de Gobierno.

La Sección 7 (c) (2) ahora dispone que la Junta de Retiro **puede** solicitar información relacionada con la administración y finanzas del Sistema.[7]

Según la Certificación Núm. 47 que enmendó el Reglamento de Retiro el 30 de noviembre de 2018, aunque la Junta de Retiro podrá evaluar y recomendar candidatos para la posición de Director Ejecutivo a la Junta de Gobierno, el Director Ejecutivo será designado por y será un puesto de confianza de la Junta de Gobierno. Sección 10 del Artículo XI.

El Artículo XIII disponía que salvo en situaciones de emergencia, el Consejo [Junta de Gobierno] requerirá de la Junta de Retiro que pase juicio sobre las enmiendas propuestas y que le informe su posición durante un tiempo razonable. Sin embargo, el Artículo XIII, según enmendado, dispone que la Junta de Gobierno podrá enmendar, modificar o derogar en todo o en parte el Reglamento en cualquier reunión debidamente constituida y de

---

[7] Antes de esta enmienda al *Reglamento del Retiro*, la Junta de Retiro tenía la facultad de solicitar, recibir y ser informada sobre toda aquella información relacionada con la administración y finanzas del Sistema.

Case: 23-00038-23-Sv-0108261-Bo Filed: 05/23/2 Filed: 06/05/23 Page: 30 of 54 Desc:
SJ2023 Appendix Exhibit 2023 Complaint Entrada Page 30 of 54

KLAN201900304 cons. con KLCE201900366                    30

cuya agenda formen estos propósitos sin necesidad de consultar
a la Junta de Retiro.

C.

*Poder de Reglamentación de las Agencias Públicas Bajo la
Ley de Procedimiento Administrativo Uniforme del Gobierno
de Puerto Rico (LPAUG) LEY 38-2017, 3 LPRA sec. 9601 et
seq.*

Para evaluar la autoridad delegada en las agencias públicas
para aprobar reglamentos resulta indispensable auscultar las
leyes orgánicas que las crean, y así precisar su capacidad de
intervención en distintos asuntos. *Pueblo v. Barahoma Gaitan*,
201 DPR 567 (2018).[8] Esto, pues la autoridad de una agencia
administrativa para la aprobación de reglas o reglamentos
depende de los poderes delegados por la Asamblea Legislativa a
través de su ley orgánica y habilitadora.[9] En la jurisprudencia se
ha reiterado que al determinar la validez de un reglamento
administrativo, debemos considerar: (1) si la actuación
administrativa está autorizada por la ley; (2) si se delegó poder
de reglamentación; (3) si la reglamentación promulgada está
dentro de los amplios poderes delegados; (4) si al aprobarse el
reglamento se cumplió con las normas procesales de la ley
orgánica y de las leyes especiales, y (5) si la reglamentación es
arbitraria o caprichosa. *Danosa Caribbean, Inc. v. Neg. Asist.
Contr.*, 185 DPR 1008, 1030 (2002). Evitando así que la agencia
exceda el marco de autoridad delegado por la Asamblea
Legislativa y actúe de manera ilegal o *ultra vires*.

---

[8] Citando a *CIC Const. v. JSMP-UPR*, 196 DPR 964, 973 (2016); *Ayala
Hernández v. Consejo Titulares*, 190 DPR 547, 559 (2014); *DACo v. AFSCME*,
185 DPR 1, 12 (2012); *ASG v. Mun. San Juan*, 168 DPR 337, 343 (2006).
[9] *Íd*, citando a D. Fernández Quiñones, *Derecho Administrativo y Ley de
Procedimiento Administrativo Uniforme*, 3ra ed., Forum, 2013, sec. 2.1, págs.
35-36.

Case:23C003823-3-v-01261-Bo Filed:05/23/23 Entered:06/05/23 Page:3130:54 Desc:
SJ2023CV06061K05/2023 05 Complaint Dktd 1 Nbr 34-1 Page 31 of 54

KLAN201900304 cons. con KLCE201900366                                    31

La función del tribunal es determinar si existe una relación o conexión racional entre una regla o reglamento y el estatuto. El ataque contra la reglamentación adoptada para poder ser exitoso tiene que demostrar que "las normas aplicadas son arbitrarias por descansar en motivos desvinculados del propósito de la reglamentación".[10]

El ordenamiento clasifica las reglas en tres categorías, a saber: (1) las que formulan política pública; (2) las que ejecutan o interpretan la ley; y (3) las que establecen procedimientos. Fernández Quiñones, *Op. Cit.*, pág. 109. Sin embargo, solo las denominadas reglas legislativas activan el procedimiento de reglamentación estatuido en la LPAU, ya que son las que "impacta[n] directamente a los ciudadanos en general y obliga[n] con fuerza de ley a la agencia". *Mun. de San Juan v. Jta. Planificación*, 189 D.P.R. 895, 904 (2013); *Centro Unidos Detallistas v. Com. Serv. Pub.*, 174 D.P.R. 174, 182 (2008).

La regla legislativa tiene el efecto de crear derechos, imponer obligaciones y establecer un patrón de conducta que tiene fuerza de ley. Según la doctrina legal sentada sobre el tema por el Tribunal Supremo de Puerto Rico, la importancia que reviste esta categoría de reglamentación radica en el efecto que esa norma puede acarrear para el público en general, ya que estas reglas modifican y alteran los derechos de los individuos. Las reglas legislativas deben entonces, por su valor normativo, ajustarse a los criterios establecidos para la reglamentación formal.

---

[10] D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, supra,* citando a *Román v. Trib. Exam. de Médicos,* 116 DPR 71, 80 (1985) y *Carrero v. Depto. de Educación,* 141 DPR 830 (1996).

Case: 23-1661 Document 105-2 Filed 06/05/2024 Page 32 of 54 Desc:
SJ2023CV04408 Exhibit 2023 Complaint Entrada Page 32 of 54
KLAN201900304 cons. con KLCE201900366

32

Por el contrario, las reglas interpretativas no requieren del cumplimiento procesal antes reseñado. *Agosto Serrano v. FSE*, 132 D.P.R. 866, 873 (1993). Generalmente las reglas interpretativas se adoptan para cumplir o implantar la política pública a cargo de la agencia y pueden aprobarse, modificarse o abolirse según las circunstancias y necesidades institucionales. Entre esas reglas se hallan: (1) las reglas relacionadas con la administración interna de la agencia, que no afectan directa y sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general; (2) las formas e instrucciones, declaraciones interpretativas y declaraciones de política general, que son meramente explicativas y no tienen ningún efecto legal. Véase *Mun. de San Juan v. J.C.A.,* 152 D.P.R. pág. 691; *González v. E.L.A.,* 167 D.P.R. 400, 411 (2006).

De hecho, el propio estatuto uniformador excluye del procedimiento de reglamentación a las reglas relacionadas con la administración interna de la agencia, que no afectan directa y sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general; y a aquellas instrucciones, declaraciones interpretativas o de política general, de naturaleza explicativas y que no tienen ningún efecto legal. *Mun. de San Juan v. J.C.A.*, 152 D.P.R., pág. 691; véase, 3 L.P.R.A. § 2102(l)(1-2). Sobre estas reglas, el Tribunal Supremo de Puerto Rico ha expresado que han sido "creadas <u>cuando las agencias administrativas aprueban directrices u otras reglamentaciones informales con el propósito de darle uniformidad a sus propios procesos, pautar la discreción administrativa u otros fines internos</u>". *Id*., págs. 691-692. Estas normas, no obstante, son de aplicación general, <u>vinculan administrativamente y pueden ser</u>

modificadas judicialmente. *Agosto Serrano v. Fondo*, 132 D.P.R.,

pág. 873. Énfasis nuestro.

D.

**La Ley de Fideicomisos de 2012**, *32 LPRA sec. 3351 et seq.*

El fideicomiso puertorriqueño es una institución que incorpora los principios del trust anglosajón e intenta armonizarlos con nuestra tradición civilista. *Dávila v. Agrait*, 116 DPR 549, 554 (1985). Es por ello, que se le ha reconocido como una "figura híbrida" en la que resulta difícil precisar y armonizar sus contornos civilistas y anglosajones. C. T. Lugo Irizarry, *El fideicomiso en Puerto Rico: un híbrido jurídico ante el futuro*, First Book Publishing of PR, 1996, pág. 15.

La primera regulación puertorriqueña del fideicomiso fue una adaptación de la ley de Fideicomiso de Panamá y fue adoptada mediante la Ley Núm. 41 de 23 de abril de 1928 que incorporó a nuestro Código Civil los artículos del 834 al 874. Posteriormente, se aprobó la Ley Núm. 219-2012, mejor conocida como la Ley de Fideicomisos, 32 LPRA sec. 3351, *et seq*. La misma derogó los Arts. 834 al 874 del Código Civil, y consagró la figura del fideicomiso bajo una sola pieza legislativa.

Conforme al artículo 1 de Ley Núm. 219-2012, *supra*, el fideicomiso es "un patrimonio autónomo que resulta del acto por el cual el fideicomitente le transfiere bienes o derechos, y que será administrado por el fiduciario para beneficio del fideicomisario o para un fin específico". De esta forma, los bienes y derechos quedan totalmente separados de los patrimonios personales del fideicomitente, fiduciario y del fideicomisario. Artículo 2 de la Ley 219-212, 32 LPRA sec. 3351a.

Case: 23-1261 Document 05723 Filed 06/05/24 Page 34 of 54 Desc:
SJ2023 Appellate Exhibit 020 Complaint Entrada Page 34 Pág 34 de 54

KLAN201900304 cons. con KLCE201900366

Por otro lado, el fideicomiso puede constituirse para servir cualquier fin siempre que no sea contrario a la ley, la moral y el orden público. Artículo 12 de la Ley 219-212, 32 LPRA sec. 3352e.

El fideicomiso es una institución jurídica que estuvo regulada por nuestro Código Civil. Según definido por el Art. 834 del referido código, 31 L.P.R.A. 2541, un fideicomiso es "un mandato irrevocable a virtud del cual se transmiten determinados bienes a una persona, llamada fiduciario, para que disponga de ellos conforme lo ordene la que los transmite, llamada fideicomitente, a beneficio de este mismo o de un tercero llamado fideicomisario". En la actualidad, esta figura jurídica se rige por la Ley Núm. 219-2012, Ley de Fideicomisos.

El fideicomiso puertorriqueño es una institución con caracteres particulares que incorpora los principios del *trust* anglosajón e intenta armonizarlos con nuestra tradición civilista. *Dávila v. Agrait*, 116 DPR 549, 554 (1985). Es por ello que se le ha reconocido como una "figura híbrida" en la que resulta difícil precisar y armonizar sus contornos civilistas y anglosajones. C. T. Lugo Irizarry, *El fideicomiso en Puerto Rico: un híbrido jurídico ante el futuro*, First Book Publishing of PR, 1996, pág. 15.

La primera regulación puertorriqueña del fideicomiso fue una adaptación de la ley de Fideicomiso de Panamá y fue adoptada mediante la Ley Núm. 41 de 23 de abril de 1928 que incorporó a nuestro Código Civil los artículos del 834 al 874. Posteriormente, se introdujeron algunas enmiendas mediante la Ley Núm. 211 de 8 de mayo de 1952. En ese entonces, se definió el fideicomiso como un <u>mandato irrevocable</u> en virtud del cual se transmiten determinados bienes a una persona llamada fiduciario, para que dispusiera de ellos conforme lo ordene la que los trasmite, llamada fideicomitente, a beneficio de este mismo o de un tercero llamado

fideicomisario. Art. 834 del Código Civil de Puerto Rico, 31 LPRA sec. 2541.

Tras varias décadas sin ser alterada dicha regulación, se aprobó la Ley Núm. 219-2012, mejor conocida como la Ley de Fideicomisos de 2012, 32 LPRA sec. 3351, *et seq*. (Ley Núm. 219). La misma derogó los Arts. 834 al 874 del Código Civil, y consagró la figura del fideicomiso bajo una sola pieza legislativa. Esta Ley introdujo varios cambios pertinentes al asunto que nos ocupa. Entre estos, se redefinió el concepto del fideicomiso y se dispuso la creación de un Registro de Fideicomisos en el cual se debe inscribir todo fideicomiso constituido en Puerto Rico, bajo pena de nulidad.

Conforme a la Ley de Fideicomisos, un fideicomiso es "un patrimonio autónomo que resulta del acto por el cual el fideicomitente le transfiere bienes o derechos, y que será administrado por el fiduciario para beneficio del fideicomisario o para un fin específico, de acuerdo con las disposiciones del acto constitutivo y, en su defecto, conforme a las disposiciones de esta Ley". 32 LPRA sec. 3351. Lo anterior denota un cambio de conceptos, de "mandato irrevocable" a patrimonio autónomo que resulta de un acto del fideicomitente. Este cambio surge del reconocimiento de que la frase "mandato irrevocable" era una contradictoria y antijurídica, pues el fideicomiso y el mandato son figuras distintas. Se indica que el mandato es esencialmente revocable y se actúa con relación a bienes que son y continúan siendo del mandante. En cambio, el fideicomiso es irrevocable y permite que los bienes se transmitan al fiduciario, quien no puede equipararse a un mandatario, pues cuando dispone de los bienes lo hace a su nombre propio. Con este cambio se le da plena

concreción al concepto de patrimonio autónomo, que es una cualidad indispensable de la figura misma del fideicomiso.

Recientemente, se introdujeron enmiendas a la Ley Núm. 2012 mediante la aprobación la Ley Núm. 9-2017 y la Ley Núm. 102-2017. Esta última, que se limita a corregir un error de referencia en el artículo 64 aplicable a los fideicomisos de fines públicos. Por su parte, **uno de los cambios más importantes introducidos por la Ley Núm. 9-2017 es el de dotar con personalidad jurídica el fideicomiso.** El Art. 2, que define el patrimonio que constituye el fideicomiso, fue enmendado para que leyera como sigue:

> Los bienes o derechos fideicomitidos constituyen un patrimonio totalmente autónomo y separado de los patrimonios personales del fideicomitente, del fiduciario y del fideicomisario, que queda afectado al fin particular que se le confiera al momento de la constitución.
>
> **Otorgada y radicada la escritura de constitución de fideicomiso conforme a las disposiciones de esta Ley, se constituirá una entidad jurídica independiente de los fideicomitentes, fiduciarios y fideicomisarios que la componen, gozando de personalidad jurídica plena.**
>
> Mientras subsista el fideicomiso, este patrimonio queda exento de la acción singular o colectiva de los acreedores del fideicomitente, el fideicomisario y del fiduciario, salvo lo establecido en las secs. 3353i *et seq*. de este título. (Énfasis nuestro). 32 LPRA sec. 3351(a).

Este arreglo posibilitó a que el fideicomitente transfiriera el dominio sobre los bienes fideicomitidos a la persona jurídica que es el fideicomiso y designara a un sujeto de su confianza, el fiduciario, para realizar la finalidad que se propuso al constituir el fideicomiso. En este respecto, se aclara que la personalidad atenuada del fideicomiso se refiere a una capacidad en función a su fin y para fines utilitarios como lo es su inscripción en el Registro Especial de Fideicomisos. Además, según consideran

estudiosos del tema, con dicha capacidad no se haría necesario hacer trámites en el Registro de la Propiedad si el fiduciario se muere, se destituye, renuncia, repudia su cargo, se incapacita o se sustituye por cualquier razón, pues los bienes aparecerían inscritos a nombre del fideicomiso. Lugo Irizarry, *op. cit.*, págs. 35-36.

En cuanto al reconocimiento de la personalidad jurídica de los fideicomisos, el Tribunal Supremo de los Estados Unidos, por voz de la Jueza Sotomayor, reconoció que tradicionalmente los *trust* no eran considerados una entidad legal, sino una relación fiduciaria entre múltiples personas. *Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016). Así, los procedimientos legales que involucran los *trust* son instados por o en contra de los fiduciarios bajo su nombre propio.

La Ley Núm. 219-2012, 32 LPRA sec.3351a, dispone expresamente lo siguiente;

> Los bienes y derecho fideicomitidos constituyen un patrimonio totalmente autónomo y separado de los patrimonios personales del fideicomitente, del fiduciario y del fideicomisario, que queda afectado al fin particular que se le confiera al momento de la constitución.
>
> Otorgada y radicada la escritura de constitución de fideicomiso conforme a las disposiciones de este capítulo, se constituirá una entidad jurídica independiente de los fideicomitentes, fiduciarios y fideicomisarios que la componen, gozando de personalidad jurídica.
>
> Mientras subsista el fideicomiso, este patrimonio queda exento de la acción singular o colectiva de los acreedores del fideicomitente, el fideicomisario y del fiduciario, salvo lo establecido en las secs. 3353i et seq. de este título.

La sec. 1.28 de la Ley Núm. 219-2012, 32 LPRA sec. 3352t, le impone al fiduciario el deber rector de actuar únicamente en beneficio del fideicomisario. Luego de aceptar el fideicomiso, el fideicomisario estará obligado a "[a]dministrar el fideicomiso de buena fe, de acuerdo con los términos y propósitos del mismo y conforme a las disposiciones de este capítulo y en interés del

Case:23-03083-23-v-01261-Bo Filed 05/23/2 Filed 06/05/2 Page 38 of 54 Desc:
SJ2023Qypend08 Ex05/2020 05 Main Dentrada Paige 38 Page 38 de 54

KLAN201900304 cons. con KLCE201900366                    38

fideicomisario, procurando realizar todos los actos que sean necesarios para la consecución del fin del fideicomiso". 32 LPRA sec. 3352t(a). Asímismo impone al fiduciario el deber de invertir y administrar los bienes el fideicomiso únicamente para beneficio de los fideicomisarios. 32 LPRA sec. 3352t(d)

A su vez, es doctrina reiterada que los fiduciarios tienen la responsabilidad fundamental de mantener lealtad absoluta a los intereses de los fideicomisarios durante su administración. *Kogan v. Registrador.* 125 DPR 636 (1990).

Dispone además, la sec. 1.28 de la Ley Núm. 219-2012, 32 LPRA sec. 3353d incisos (d) y (e), que el fideicomisario o sus representantes legales, podrán instar en el tribunal los remedios que correspondan para, entre otros, solicitar la remoción del fiduciario, y para requerirle al fiduciario el pago de cualquier suma de dinero o la entrega inmediata de bienes del fideicomiso que tenga derecho a recibir inmediata o incondicionalmente bajo los términos del fideicomiso.

La sec. 1.68 de la Ley Núm. 219-2012, 32 LPRA sec.3354f, según enmendada por la Ley Núm. 9-2017 (Art. 68), dispone en lo pertinente a los fideicomisos de fines públicos:

> El Secretario de Justicia, un co-fiduciario o una persona con un interés especial en la consecución de los fines del fideicomiso, podrán hacer valer el fideicomiso de fines públicos, ejercitando los recursos que este capítulo le confiere.
> **Una entidad de naturaleza afín, a los fines del fideicomiso, tendrá legitimación para solicitar la remoción del fiduciario por el <u>incumplimiento sustancial con sus obligaciones</u> y solicitar ser nombrada fiduciaria sustituta. (Énfasis suplido)**

Como norma supletoria, la sec. 1.69 de la Ley Núm. 219-2012. 32 LPRA sec.3355, según enmendada por el Art. 72, dispone lo siguiente:

> En todo lo que este capítulo guarde silencio o si alguna de sus disposiciones requiere interpretación, se recurrirá a la doctrina y a la jurisprudencia del derecho angloamericano sobre

Case: 23-03038-23-5v-0181261-Bo Filed: 05/23/2Biled: 06/05/2Page: 390f 54 Desc:
SJ2023CV04401i1K10f/2023 05 Complaint Entrada Num ge 39 of 54
KLAN201900304 cons. con KLCE201900366                                          39

fideicomisos, salvo que otra cosa necesariamente se infiera de alguna de sus disposiciones o que este capítulo se remita expresamente a la legislación de Puerto Rico.

### 1. *LA ESCRITURA DE FIDEICOMISO PARA EL RETIRO*

**En el presente caso el Artículo I Sección 1.1 de la Escritura de Fideicomiso** nombra a la Junta de Gobierno como Administrador del Plan de Pensiones y del fideicomiso y dispuso expresamente lo siguiente:

> "Administrator: *The Original Trustee, specifically the members of its Board of directors as appointed from time to time in accordance with Act. No. 1, Certification Number 27 and any other certifications concerning the Pension Plan and of this deed, who shall have full fiduciary responsibility for the Pension Plan and the Trust Fund, and is authorized to delegate its administrative and some other discretionary powers on the Retirement Board and the Executive Director.*"

El **Artículo I Sección 1.2** de la Escritura de Fideicomiso define además, la Junta de Retiro como "*[t]the University of Puerto Rico Retirement System Board that oversees the Pension Plan´s affairs and represents Participants and Retirees, and is directly responsable to the Original Trustee*".

En lo referente al deber fiducia de la Junta de Gobierno (*Original Trustee*) y su responsabilidad sobre las contribuciones realizadas al fondo del fideicomiso, el Artículo II, Sección 2.1 de **Escritura de Fideicomiso estableció en lo pertinente:**

> "**[..]** *The Original Trustee has fiduciary duty and its responsible for contributions made to the Trust Fund and to invest them in accordance with the provisions of Certification Number twenty seven (27), fundamentally the Investment Policy. The Original Settlor, the Original Trustee, the Retirement Board and the Executive Director shall continue to defend the valid existence of the Trust Fund and its governmental and public nature since its inception, as it has been recognized by all branches of the Government of the Commonwealth of Puerto Rico.*

Además, **la Sección 2.1 del Artículo II** de la Escritura de Fideicomiso establece que "*[t]he Original Trustee and the Retirement Board shall collaborate in establishing resolutions with reasonable procedures for making and accepting [the University and participants"] contributions*".

Case: 23-1363, 23-cv-01361, Document 05/23/2 Filed 06/05/2 Page 40 of 54 Desc:
SJ2023-Ap04408 Exhibit 020 Complaint Entrada Page 40 Page 40 de 54

KLAN201900304 cons. con KLCE201900366                    40

En lo referente a los fondos el **Artículo II, Sección 2.2** declara como obligación de la UPR lo siguiente: *"[t]he University hereby affirms and recognizes its obligation of maintaining the Tust Fund adequately funded and in any event shall join efforts with the Original Trustee aimed to assure the solvency and long lasting existence of the Pension Plan".*

En cuanto a la naturaleza pública del sistema, **el Artículo II Sección 2.3 de la Escritura de Fideicomiso** agrega que:

> *"[t]he **Pension Plan and the Trust Fund** are for **the public interest** aimed at promoting higher education in Puerto Rico through the University by retaining the docent and non-docent personel of the University. The Pension Plan and the Trust Fund are a governmental and public nature."*

**El Artículo III, Sección 3.1 de la Escritura de Fideicomiso** establece expresamente como deberes de la Junta de Gobierno lo siguiente:

> *"[…] The Original Trustee **has the duty to manage, invest and reinvest the assets for the exclusive benefit of the Trust Fund and the Pension Plan Participants, Retirees and beneficiaries and proceed to apply and distribute the income in accordance with the terms and conditions of the Pension Plan governing provisions.** The Original Trustee acknowledges its obligation to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such maters would use in the conduct of an enterprise of a like character and like aims; by diversifying the investments of the Trust Fund so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent to do so.[…]."*

**El Artículo III, Sección 3.3.3 de la Escritura de Fideicomiso** desglosa los poderes que podrá ejercer la Junta de Gobierno como fiduciario y entre otras facultades se le confiere poderes para lo siguiente:

> "All necessary actions aimed to procure promt payment of the University´s contributions to the Pension Plan. The University through the Original Trustee has established and should continue to enter into those mutual and satisfactory agreements by virtue of which the contributions owed to the Trust Fund by the Employer are paid, including the execution of high liquid collateral in the event of default of payment of the University contributions, to enter into those mutual agreements under which the actuarial underfunding of the Pension Plan will be addressed and rectified,

Case: 23-3603 23-3361 Document: 052723 Filed: 06/05/2023 Page: 41 of 54 Desc:
SJ2023CV09660 Appendix Complaint Exhibit Page 41 de 54

KLAN201900304 cons. con KLCE201900366                    41

including, among other matters, additional contributions by the University in accordance with actuarial forecast, duly prepared or to be prepared and any other financial or cost efficiency report prepared by third parties on behalf of the Pension Plan. To take all necessary actions that may be convenient and /or necessary in order to transfer or endorse all notes evidencing debt of the Participants and /or the Beneficiaries with the Trust Fund for personal or mortgage loans disbursed by the Trust Fund to the participants and /or the Beneficiaries, which, at present, appear payable in favor or to the order of the University as creditor."

El Artículo V, Sección 5.1 de la Escritura de Fideicomiso dispone en cuanto a la remoción o remplazo de los miembros de la Junta de Gobierno, lo siguiente:

The Original Trustee may be removed or replaced by amendment to Act. No. 1 or repeal of Act No 1. In case the election of a successor trustee is not accomplished by an act of legislature, The University or its legal successor shall appoint a successor trustee to act hereunder within ninety (90) days after the effective date of said amendment to Act. No. 1 or repeal of Act. No. 1. The University shall nominate the Retirement Board or its legal surrogate as its first choice for a successor trustee. If required, the University or its legal surrogate shall accomplish all acts necessary to transform the Retirement Board into a legal entity and to be a suitable trustee.

E.

Al amparo de las nuevas Reglas de Procedimiento Civil, el recurso de *Certiorari* solamente será expedido por este Tribunal cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 [Remedios Provisionales e *Injuction* o de la denegatoria de una moción de carácter dispositivo]. Regla 52.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R 52.1. A manera de excepción, se revisarán dichas órdenes o resoluciones cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, cuando revistan interés público o cuando esperar hasta la apelación constituiría un fracaso irremediable de la justicia.

III

En la resolución recurrida emitida por el TPI en el caso núm. SJ2018CV09660, objeto de la *Petición Certiorari* que nos ocupa,

Case: 23-01893-23-8v-003261-B of Filed: 05/23/23 Entered: 06/05/23 Page 42 of 54 Desc:
SJ2023CV04408 Exhibit 020 Complaint Entered Page 42 of 54

KLAN201900304 cons. con KLCE201900366                    42

la Junta de Retiro reclamó incumplimiento de la Junta de Gobierno con su deber de fiducia y solicitó un *injunction* preliminar y permanente. El foro primario denegó la solicitud de *injunction* preliminar y refirió el caso al trámite ordinario.

No obstante, en dicha Resolución recurrida el TPI concluyó que la prueba presentada por la Junta de Retiro <u>logró establecer que la Junta de Gobierno ha condonado deudas de la UPR con el Fideicomiso.</u> Asimismo, determinó el foro primario que la Certificación Núm. 146 reflejó que existía una insuficiencia en la aportación patronal de parte de la UPR de $19,947,111.00, para los años 2016-2017 y 2017 y 2018. Ello porque el Plan Fiscal (2017-2018) redujo la aportación patronal correspondiente, lo que provocó una insuficiencia de $13,016,073.00 para esos años. Es decir, que según lo determinó el foro primario en la Resolución recurrida que refirió el caso al trámite ordinario, en lugar de exigir a la UPR el cumplimiento de sus obligaciones con el Fideicomiso. Razonó además, el TPI que como la Junta de Gobierno, aprobó posteriormente la Certificación Núm. 39 (2018-2019) mediante la cual la Junta de Gobierno aceptó el pago de $10 millones ($7 millones neto), **que ello tuvo el propósito de finiquitar** las reclamaciones y las deficiencias al Fondo del Fideicomiso del Sistema de Retiro para los años 2016-2017 y 2017-2018.

Es un hecho incontrovertido en el caso que nos ocupa, que conforme a la Certificación Núm. 146, a la Universidad de Puerto Rico le correspondía pagar $79,155,377.00 en concepto de su aportación patronal al Fideicomiso para el Fondo Retiro para el año 2016-2017. Sin embargo, la aportación recibida fue de $72,181,980.00. Así las cosas, para el año 2016-2017 existe una insuficiencia de $6,973,397.00.

Case: 23-02638-23-8v-D12261-B Document 05/23/2 Filed 06/05/2 Page 43 of 54 Desc: SJ2023CV Appendix K Dtd 2023 05 Complaint Dtd 11 Page 43 of 54

KLAN201900304 cons. con KLCE201900366          43

Igualmente, según la Certificación Núm. 146, a la Universidad de Puerto Rico le correspondía pagar $81,530,038.00 en concepto de su aportación patronal al Fideicomiso para el año 2017-2018. Sin embargo, bajo el Plan Fiscal aprobado para dicho año, a la Universidad le correspondía pagar $74,559,000.00. A pesar de dicha reducción, la aportación recibida para ese año fue de $68,556,324.00. Así es que para el año 2017-2018 existe una insuficiencia de $6,042,676.00 en comparación con la cantidad correspondiente bajo el Plan Fiscal y de $12,973,714.00 en comparación con la cantidad esperada bajo la Certificación Núm. 146.

Con estos hechos probados, los cuales no están en controversia, en la Resolución recurrida que denegó a la Junta de Retiro la solicitud de *injunction* preliminar, el TPI concluyó como cuestión de derecho, que dicha aceptación de pago por parte de la Junta de Gobierno **constituye una condonación, que extinguió la obligación de la UPR de la aportación patronal de una suma determinada al Fideicomiso de Retiro**, conforme a lo dispuesto en el Artículo 110 del Código civil, 31 LPRA sec. 3151. Razonó el TPI que al aceptar un pago menor que el establecido, en lugar de exigir el cumplimiento a plazos de la aportación patronal, el cual ya había sido reducido en el Plan Fiscal (2017-2018), **la Junta de Gobierno pudo haber incumplido con su deber de lealtad a los intereses de los fideicomisarios que exige nuestro ordenamiento.** Sin embargo, a pesar de los hechos probados, concluye el foro primario que tales actuaciones de la Junta de Gobierno *no constituyen un incumplimiento sustancial* con el deber de fiducia, tal y como lo requiere la Ley de Fideicomisos para la destitución del fiduciario y que tampoco es sustancial el

Case: 23-08034-25-5-v-01 8261-Bo Fi le-05/23/2 Bil Ent 06/15/25/ Page 43 of 54    Desc:
SJ2023 Cpyne 108 Ex 05/2025 C5 of pl im in Entrada Page 44 Pág 44 de 54

KLAN201900304 cons. con KLCE201900366                    44

incumplimiento para la procedencia del *injunction* preliminar. Razona además, el foro primario que no es sustancial el incumplimiento porque la propia parte demandada admitió que cualquier daño se podría reparar mediante aportaciones futuras. Finalmente el TPI justifica el incumplimiento en que aunque la Certificación Núm. 39 (2018-2019) tiene el propósito de finiquitar las reclamaciones del Sistema de Retiro aun existiendo una deuda, la misma ni propone ni descarta la posibilidad de un pago **futuro**.

**Como cuestión de umbral nos corresponde resolver si estos hechos probados e incontrovertidos,** constituyen o no un incumplimiento sustancial con el deber de fiducia que tiene la Junta de Gobierno para la protección del Fondo del Fideicomiso para el Retiro. Si la respuesta es afirmativa es necesario precisar si ello conllevaría la destitución de la Junta de Gobierno como fiduciario del Fondo el Fideicomiso y si procedía el *injunction* preliminar. Para el correspondiente análisis no puede perderse de perspectiva que en el caso que nos ocupa estamos ante un fideicomiso con fines públicos, lo cual tampoco está en controversia, y que según lo dispuesto en la Ley Núm. 2019-2012 los fideicomisarios pueden pedir la destitución del fiduciario por el incumplimiento sustancial con sus deberes, además de tomar otras acciones para la protección del fin del fideicomiso. Procede además evaluar si la posibilidad de que la Junta de Gobierno procure realizar aportaciones futuras en beneficio del fideicomisario conllevaría que su incumplimiento inicial con el deber de fiducia no fuera sustancial.

Primeramente, el **Artículo II, Sección 2.2** de la Escritura de Fideicomiso establece que la UPR afirma y reconoce la obligación de **mantener los fondos del fideicomiso** (*Trust Fund*) y que ante cualquier eventualidad unirá esfuerzos con la

Case:23-03003-23-Sv-01 18261-B Filed:05/23/23 Entered:06/05/23 Page:45 of 54 Desc:
SJ2023CV00064 11/05/2023 05:14 Complaint Entrada Num. 4 Página 45 de 54

KLAN201900304 cons. con KLCE201900366                                    45

Junta de Gobierno (*Original Trustee*) para asegurar la solvencia y durabilidad a largo plazo del Plan de Pensiones.

En cuanto a la naturaleza del Sistema de Plan de Pensiones de la UPR y del *Trust Fund,* el Artículo II, Sección 2.3 de la Escritura de Fideicomiso estableció la naturaleza pública del sistema, toda vez que con fines públicos, mediante la retención de aportaciones del personal docente y no docente de la UPR, promovían la educación superior en Puerto Rico a través de la UPR. Así las cosas, **la aludida Sección 2.3 de la Escritura de Fideicomiso dispuso expresamente que *"[t]he Pension Plan and the Trust Fund are of a governmental and public nature."***

Puntualizamos que el **Artículo III, Sección 3.1** de la Escritura de Fideicomiso impone a la Junta de Gobierno (*Original Trustee*) el deber de manejar, invertir y reinvertir los activos para el uso exclusivo del Fondo del Fideicomiso y el Plan de Pensiones de los participantes, beneficiarios y retirados y proceder a distribuir el ingreso conforme a los términos y condiciones que gobiernan las disposiciones del Plan de Pensiones. Agrega dicha Sección 3.1 que **la Junta de Gobierno tiene la obligación de actuar con cuidado, destreza, prudencia y diligencia como una persona prudente y razonable conduciría una empresa de esa naturaleza y en cuanto la diversificación de las inversiones del fondo del fideicomiso instruye a la Junta de Gobierno a minimizar el riesgo de grandes pérdidas a menos que bajo ciertas circunstancias fuera claramente prudente hacerlo.**

**La Escritura de Fideicomiso define inequívocamente al Fideicomiso de Retiro UPR como los activos aportados por el patrono y por los empleados. El Fideicomiso de Retiro**

Case: 23-08083-23-6v-01261-3... Filed: 05/23/2... Filed: 06/05/2... Page: 46 of 54    Desc:
SJ2023... Exhibit... Complaint Entrada... Page: 46 Page: 46 de 54

KLAN201900304 cons. con KLCE201900366                46

de la UPR es un patrimonio que consiste de los fondos de las aportaciones patronales y del cual se realizan las distribuciones a los empleados y los pagos relacionados con el funcionamiento del Sistema de Retiro.

Primeramente, precisa destacar que en la Escritura de Fideicomiso se nombra a la Junta de Gobierno de la UPR como Administrador del Plan de Pensiones y como fiduciario del mismo.

De los hechos incontrovertidos, y del **deber de fiducia** de la Junta de Gobierno, cuyo Fideicomiso para el Fondo del Retiro es uno que, por su naturaleza tiene un fin público, **concluimos que al aprobar la Certificación Núm.39 (2018-2019), el 9 de noviembre de 2018, la Junta de Gobierno <u>incurrió un incumplimiento sustancial con su deber de fiducia.</u>** Ello es así ya que **en la aludida Certificación Núm. 39 (2018-2019) la Junta de Gobierno, a pesar de reconocer la existencia de una deuda de 43 millones del Sistema de Retiro de la Universidad, concluye que con la transferencia neta de $7 millones <u>se finiquitan las reclamaciones del Sistema de Retiro por las deficiencias generadas durante los años 2016-2017 y 2017-2018</u>.**

Dicho curso de acción no constituye un mero acto administrativo inconsecuente sino un incumplimiento sustancial con el deber de fiducia de la Junta de Gobierno consistente en la protección del Fondo del Fideicomiso para el Retiro. <u>La posibilidad de que posteriormente la Junta de Gobierno pudiera determinar completar esa deficiencia mediante una asignación o aportación patronal mayor, además de ser especulativa, no subsana el incumplimiento ni transforma la naturaleza sustancial del mismo.</u> Igualmente, tampoco garantiza el surgimiento de nuevas aportaciones al Fondo del Fideicomiso para el Retiro ni contempla

mecanismos correctivos ni coercitivos para exigir su cumplimiento con el deber de fiducia.

Téngase en cuenta que además, el **21 de septiembre de 2018 el Sistema de Retiro envió una factura al cobro Núm. 17-035 a la Oficina de Finanzas de la Administración Central de la UPR, en la que requirió el pago de $6,973,397.07 en concepto del total de atrasos en los pagos de las remesas de la amortización cerrada de la deuda actuarial de la UPR. Sin embargo, estos intentos de cobro no recibieron respuesta y en cambio el <u>9 de noviembre de 2018</u>, la Junta de Gobierno aprobó Certificación Núm. 39 (2018-2019) en la que, a pesar de reconocer la existencia de una deuda de 43 millones del Sistema de Retiro de la Universidad, concluye que con la transferencia neta de $7 millones <u>se finiquitan las reclamaciones del Sistema de Retiro por las deficiencias generadas durante los años 2016-2017 y 2017-2018</u>. El incumplimiento sustancial de la Junta de Gobierno con su rol fiduciario consistente en faltar a su deber de lealtad y de proteger el Fondo para el Fideicomiso para el Retiro, a lo que se obligó en la escritura de Fideicomiso, afecta la capacidad del pago de las pensiones del Fideicomiso, cuando la Junta de Gobierno mediante la Certificación Núm. 39 (2018-2019) finiquitó una deuda de 43 millones del Sistema de Retiro de la Universidad, con la transferencia neta de $7 millones.**

Con estos antecedentes concluimos que **incidió el foro primario al emitir la Resolución recurrida en el caso SJ2018CV09660, que denegó la solicitud de** *injunction* **preliminar presentada por la Junta de Retiro por ausencia**

Case:23-01061-BodFiler:06/23/23Entered:06/05/2Page:4830:54 Desc:
SJ2023Cpuvento EximO6/2023 Complain Entrada Page 48 of Page 48 de 54

de prueba suficiente sobre incumplimiento sustancial con el deber de fiducia. **Reiteramos que incidió el foro primario al concluir que el incumplimiento de la Junta de Gobierno con el deber de fiducia al aprobar la Certificación Núm. 36, no fue no sustancial,** porque la prueba no lo estableció en esa etapa, **cuando en la aludida Certificación Núm. 36 se establece que su propósito claro es finiquitar las reclamaciones del Sistema de Retiro por las deficiencias generadas durante los años 2016-2017 y 2017-2018, a pesar de reconocer en la propia Certificación Núm. 39, la existencia de una deuda de 43 millones del Sistema de Retiro de la Universidad**.

Precisamente, los hechos incontrovertidos basados en la prueba desfilada y alguna de esta estipulada, establecen claramente el incumplimiento sustancial de la Junta de Retiro con su deber de fiducia al intentar finiquitar mediante la Certificación Núm 36 las reclamaciones del Sistema de Retiro por las deficiencias generadas durante los años 2016-2017 y 2017-2018, en detrimento del Fondo para el Fideicomiso de Retiro cuya sustentabilidad venía obligada a proteger la Junta de Retiro.

**Con estos antecedentes, concluimos que incidió el foro primario al denegar el *injunction* provisional y permanente solicitado por la Junta de Retiro toda vez que de los hechos incontrovertidos surge que** la Junta de Gobierno incumplió de forma sustancial con sus deberes fundamentales de lealtad hacia los fideicomisarios, según descritos y establecidos en la Escritura de Fideicomiso.

Ante este cuadro de hechos puntualizamos que la sec. 1.68 de nuestra Ley de Fideicomisos, Ley 219-2012, 32 LPRA sec. 3354f, establece que una persona con interés especial en la

Case: 23-01008-23-Sv-018261-Boletin 05/23/23 Filed 06/05/23 Page 49 of 54 Desc:
SJ2023CV04496K1 Exhibit 05 Complaint Entered 11 Page 49 de 54

KLAN201900304 cons. con KLCE201900366                    49

consecución de los fines del fideicomiso, puede hacer valer el fideicomiso de fines públicos, como el que nos ocupa, ejercitando los derechos de la Ley 219-2012. Dispone la aludida sección 1.68, *supra,* que *"[u]na entidad de naturaleza afín, a los fines del fideicomiso, tendrá legitimación para solicitar la remoción del fiduciario por el incumplimiento sustancial de sus obligaciones y solicitar ser nombrada fiduciaria sustituta".* 32 LPRA sec. 3354f.

Finalmente, en cuanto al asunto que nos ocupa, destacamos que la sec. 1.14 de la Ley 219-2012, la cual contempla la **capacidad del fideicomitente** destaca en lo pertinente que "[l]as entidades gubernamentales autorizadas por ley pueden retener bienes propios en fideicomiso y actuar como fiduciarios de los mismos para el desarrollo de sus fines, mediante declaración hecha con las formalidades de este capítulo. Las entidades gubernamentales podrán ser fiduciarios, si los fines del fideicomiso se encuentran comprendidos dentro del objeto de la entidad."

Ante el incumplimiento sustancial de la Junta de Gobierno con su deber de fiducia sobre el Fideicomiso para el Fondo de Retiro de la UPR **somos de la opinión que la Junta de Retiro es una entidad de naturaleza afín a los fines del Fideicomiso para el Fondo de Retiro por lo que tiene legitimación para solicitar la remoción de la Junta de Gobierno como fiduciario. Además, según lo solicitó al foro primario y a este Tribunal de Apelaciones, procede que la Junta de Retiro, sea nombrada como fiduciaria sustituta ante el incumplimiento sustancial de la Junta de Gobierno con su rol fiduciario y toda vez que los fines del fideicomiso**

**se encuentran comprendidos dentro del objeto de la entidad.**

### *APELACIÓN (KLAN20190304)*

La Junta de Retiro apela la Sentencia emitida por el foro primario en el caso SJ2018 CV10382. Mediante dicha Sentencia el TPI concluye que como la Junta de Gobierno tiene la facultad de modificar los poderes de la Junta de Retiro mediante la aprobación de enmiendas al Reglamento del Sistema de Retiro, la Certificación Núm. 47, aprobada y publicada por la Junta de Gobierno el 30 de noviembre de 2018 es un documento lícito que contiene una política interna de la UPR, sin más propósito que el de enmendar el Reglamento del Sistema de Retiro de la UPR y al cual no le aplican los requisitos reglamentarios de la LPAUG, Ley-38-2017.

En la sentencia apelada concluyó el foro primario, que la Junta de Gobierno está facultada por la Ley de la Universidad de Puerto Rico y por la Escritura de Fideicomiso para determinar los poderes que delegará a la Junta de Retiro; que en el ejercicio de dicha facultad, la apelada enmendó el **Reglamento del Sistema de Retiro,** mediante el procedimiento establecido y que las enmiendas objetadas por la Junta de Retiro son cónsonas con el derecho aplicable y con la Escritura de Fideicomiso. Con ese razonamiento, el foro primario Declara No Ha Lugar la Demanda de Interdicto Preliminar y Permanente y Con Lugar la *Solicitud de Desestimación* de la Junta de Gobierno.

**En cuanto a los señalamientos de error de la Junta de Retiro referente a irregularidad en el procedimiento de enmiendas aprobadas al Reglamento de Retiro el 30 de noviembre de 2018 mediante la Certificación Núm. 47, precisa destacar que dichas enmiendas fueron aprobadas**

Case: 23-1653-BV-01261 Document 05223/2 Filed 06/05/24 Page 51 of 54 Desc:
SJ2023CV04406 Appendix 10/05/2023 05:14 Complaint Entrada Num. 51 Page 51 de 54

KLAN201900304 cons. con KLCE201900366                          51

mediante un procedimiento atropellado, luego de que la Junta de Retiro presentara la causa de acción de *injunction* preliminar y permanente y la remoción de la Junta de Gobierno como fiduciario, por el incumplimiento sustancial con su deber de fiducia.

Ahora bien, en estricto derecho la Junta de Gobierno no venía obligada a cumplir con el proceso de reglamentación formal de la LPAUG. Generalmente, las reglas interpretativas se adoptan para cumplir o implantar la política pública a cargo de la agencia y pueden aprobarse, modificarse o abolirse según las circunstancias y necesidades institucionales. Entre esas reglas se hallan: (1) las reglas relacionadas con la administración interna de la agencia, que no afectan directa y sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general; (2) las formas e instrucciones, declaraciones interpretativas y declaraciones de política general, que son meramente explicativas y no tienen ningún efecto legal. Véase *Mun. de San Juan v. J.C.A.,* 152 D.P.R. pág. 691; *González v. E.L.A.,* 167 D.P.R. 400, 411 (2006).

Sin embargo, nuestro razonamiento **anterior no tiene el alcance de sostener la Sentencia apelada emitida en el caso civil SJ2018CV10382, la cual declaró No Ha Lugar la *Demanda de Interdicto Preliminar y Permanente* presentada por la Junta de Retiro,** fundamentada en que al enmendar el Reglamento de Retiro la Junta de Gobierno no tenía que cumplir con el procedimiento formal de reglamentación de la LPAUG. Téngase en cuenta que en el caso civil SJ2018CV09660, el foro primario primero emitió *Resolución* en la que denegó el interdicto provisional solicitado por la Junta de Retiro; concluyó que la Junta de Gobierno no incurrió en incumplimiento sustancial

con su deber de fiducia **y remitió el caso al procedimiento ordinario.** Dicho dictamen es objeto de revocación en los recursos consolidados que nos ocupan.

**Si bien a la fecha del otorgamiento de la Escritura de Fideicomiso no se limitaron los poderes de la Junta de Gobierno como cuerpo rector de la UPR sobre el Fideicomiso, <u>quedó establecido su deber de fiducia consistente en proteger el fondo del fideicomiso para el Retiro</u>. Dicho deber fiducia se incumple sustancialmente cuando el fiduciario procede en contra de los intereses de los fideicomitentes y del objetivo principal del Fideicomiso creado.**

En dichas instancias ya en el caso civil SJ2018CV09660 resolvimos que conforme la Ley de Fideicomisos, Ley 219-2012, 3 LPRA sec. 3354f, el incumplimiento de la Junta de Gobierno con su deber de fiducia fue sustancial y que el curso de acción a seguir era su remoción como fiduciario y el nombramiento de la Junta de Retiro como fiduciario sustituto.

Aclarados estos extremos, concluimos que en la Sentencia emitida en el caso SJ2018CV10382 incidió también el TPI al desestimar la demanda de *Injunction Preliminar y Permanente* presentada por la Junta de Retiro. En ajustada síntesis y recapitulando, el fundamento para nuestra conclusión es que aún cuando la Junta de Gobierno no tenía que cumplir con el procedimiento formal para enmendar el Reglamento de Retiro, <u>procede el *injunction* permanente contra la Junta de Gobierno solicitado por la Junta de Retiro y su remoción como fiduciario por incumplimiento sustancial con su deber de fiducia.</u>

IV

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia, revocamos los dictámenes emitidos por el foro primario en los casos SJ2018CV10382 y SJ2018CV09660, objeto de los recursos consolidados ante este Tribunal de Apelaciones, designados alfanuméricamente, KLCE20190366 y KLAN20190304.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones